## HENRY W. WALKER *vs.* JOHN P. OSGOOD.

A broker employed to sell or exchange property, under a written promise of compensation in case he sends a customer with whom a sale or exchange is effected, becomes agent of the owner, and cannot properly act for a customer; and, if he exacts from a customer a conditional promise of compensation before sending him to the owner, cannot recover any compensation from the owner for services, although a sale or exchange is effected with such customer.

CONTRACT by a real estate broker to recover two hundred dollars for services rendered under the following promise in writing signed by the defendant and appended to a description of er-

tain real estate in Roxbury : " If you send or cause to be sent to me by advertisement or otherwise any party with whom I may see fit and proper to effect a sale or exchange of my real estate above described, I will pay you the sum of two hundred dollars."

At the trial in the superior court, before *Ames*, J., it appeared that the plaintiff was a real estate broker in Boston ; that the defendant went to the plaintiff's office, and employed him to sell or exchange the real estate in question, leaving with him a description of it in writing, at the foot of which was the written promise recited, signed by the defendant ; and that the plaintiff advertised the place accordingly. The plaintiff then testified thus : " About March 19, Newell E. Gates came to my office, and said he had a farm in Stowe, which he would like to sell, or to exchange for property near Boston. I told him, if I did it for him I should charge him two hundred dollars. He asked, ' Have not you got something on hand ? ' I then told him of the defendant's place, and gave him a description of it, and directions where to find the defendant. He said, ' I'll go and see him, and trade if I can ; but, if I trade with him, you must only charge one hundred dollars.' To this I agreed. The defendant and Gates did afterwards make a bargain. I have brought a suit against Gates for my commission, and the suit is now pending in this court." It was agreed that the defendant conveyed the real estate in question to Gates, and that Gates in return, at the same time, conveyed a portion of his farm to the defendant. It was also agreed that the defendant refused to pay the plaintiff's bill for the two hundred dollars.

There was conflicting evidence on the question whether Gates was induced to call upon Osgood by any information received from the plaintiff, the defendant contending, and offering evidence tending to show, that he had employed other brokers before he saw Gates, by one of whom Gates was introduced to him.

The defendant requested the judge to instruct the jury that, as it appeared by the plaintiff's own testimony that he was acting as the agent both of the defendant and of Gates, and had

charged commissions to each for so acting, and had not informed the defendant, and the defendant did not know that the plaintiff was so acting, the verdict must be for the defendant. The judge did not so rule, but ruled that, under this contract, and as the plaintiff was not employed to negotiate the bargain or to settle the price or terms of the sale or exchange, but merely to " send or cause to be sent to the defendant a party with whom he should see fit to effect a sale or exchange " of the property, the fact that he was also employed by Gates, and had charged him a commission for the exchange of his property, would not of itself be a bar to the plaintiff's claim in this action ; that the burden of proof was upon the plaintiff to show that he had fulfilled the condition on which alone the money claimed was payable to him ; that the questions for the jury were, did he send Gates or cause him to be sent to the defendant, and did the information which he gave (if the jury were satisfied that he gave any) have the effect of inducing Gates to call upon the defendant, and to enter upon negotiations with him ending in the exchange of property ; that it was immaterial whether the defendant employed other brokers ; that, if the plaintiff first gave to Gates such information as caused him to enter into communication with the defendant on the subject, and with the result above set forth, it would make no difference that, after obtaining that information from the plaintiff, Gates called on other brokers and got further information of the same kind from them, or got somebody else to introduce him to the defendant; and that the true question was, did the plaintiff procure the customer for the defendant within the terms of the contract.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*S. E. D. Currier,* for the defendant.

*E. L. Hill,* for the plaintiff.

WELLS, J. This case seems to us to stand upon the same principle as the decision in *Farnsworth* v. *Hemmer,* 1 Allen, 494. According to the statement in the bill of exceptions, the plaintiff is a real estate broker, and was employed by the defendant " to sell or exchange " certain real estate for him. An exchange

having been effected, the defendant resists the demand for the stipulated commission on the ground that, without his knowledge or consent, and in violation of good faith, the plaintiff was employed for a compensation by the other party in the same transaction. The court below ruled that this would not, of itself, defeat the claim : obviously assuming that the stipulation signed by the defendant expressed the whole obligation of the plaintiff, so that he had merely to show a literal compliance with that, as with a condition, to entitle himself to the sum named.

But the plaintiff's employment as a broker involved something more than this. Even if he had no authority to bind his principal, and was intrusted with no discretion in fixing the terms of the exchange, and his only service was to bring the parties together, he was bound to perform that service in the interest of the party who employed him. Such employment is not like the offer of a reward for the performance of some act which another may undertake or forego as he shall please. Employment implies acceptance of the service. A broker thus employed does not act in good faith if he turn aside all proposals that are not accompanied with an additional retainer or commission. Yet such is the temptation upon him, if he may levy a fee from both parties. When he has secured the retainer of the other party, he is interested, in order to win his double commission, to bring together these two, to the exclusion of all others. The interests of his principal are in danger of prejudice from this counter interest in the agent. And besides, the broker is ordinarily and almost inevitably intrusted, to a greater or less extent, with the confidence of his principal, and a knowledge of his views and purposes. This is incompatible with like relations to the other party. From the very nature and necessities of the case, such twofold interests and relations of the broker are inconsistent with the interests of the principal, and should not be maintained without his knowledge and consent.

To a certain extent and for certain purposes, by the understanding and usages of business and the nature of his employment, a broker is authorized to act for both parties. But what he does in that relation he does as an indifferent person, and not in

the interest of either party. Every one who employs him is presumed to know and consent that, to that extent and for such purposes, he may so act. But, beyond that, he has no right to engage in the interests of the other party without the actual knowledge and consent of his principal. Even custom or usage will not be allowed to extend the right to act for and receive compensation from both parties to matters in which the interests of the parties are or may be diverse. *Farnsworth* v. *Hemmer*, 1 Allen, 494.

The same general principle is asserted in *Rupp* v. *Sampson*, 16 Gray, . The verdict for the plaintiff was sustained in that case; but it was upon the distinct ground that, under the instructions given to the jury, they must be held to have found that the defendants' promise to pay was given, not for services in their employ as a broker, but for the performance of a certain specific act, namely, the introduction of Clew (the other party) to them. The court considered that, so far as the mere performance of such an act was concerned, it could make no difference to the defendants whether the plaintiff was in the employ and pay of the other party or not; and it was not such a fraud upon the other party, though concealed from him, as to render his contract with the defendants void for illegality. How far the plaintiff's dealings with the defendants were inconsistent (short of such illegality) with his obligations to Clew, was not for determination in that suit.

The present case differs from *Rupp* v. *Sampson*, in that the court assumes that the plaintiff was not employed by the defendant, except "merely to send or cause to be sent to the defendant a party," &c.; a conclusion which, to say the least, is not necessarily to be drawn as an inference of fact, nor as a matter of legal construction, from the written paper received from the defendant, and which overlooks what is stated to have appeared in the case, namely, that the defendant "came to the plaintiff's office and employed him to sell or exchange the real estate in question." From this statement we think it is fairly to be understood that, although the defendant did not empower the plaintiff to make an actual sale, or to bind him absolutely

by his negotiations, yet he did employ him, in the ordinary way, to act for his interests in offering his property for sale, finding a purchaser or a favorable exchange, and generally in promoting the object for which the defendant sought his aid.  For such a service the interests of the opposite parties are adverse ; and the agent of one cannot, without his knowledge and consent, engage to promote the interests of the other, by acting for him in the same transaction.  Although the plaintiff may have literally complied with the conditions of the defendant's written promise, yet the defendant may properly object that it was done, not for him, but for the other party, by whom he was employed and to be paid for doing it.         *Exceptions sustained*