### ' GEORGE V. BYRD

### *v.*

### GEORGE R. H. HUGHES.

1. CONTRACT—*legality of*—*illegal consideration.* A contract made by a confidential agent and adviser of his principals, by which the agent is to induce the principals to discharge their present attorney and employ another, the latter agreeing, in consideration thereof, to pay the agent one-half of his fees, is illegal, and can not be enforced by the agent, either at law or in equity.

2. SAME—*when terminated.* If a real estate agent of parties at a distance procures his principals to employ an attorney to be associated with him in their business, under an agreement with the attorney to divide fees, the contract is in the nature of a partnership, and is terminated when the agent is discharged by his principals, and he can not thereafter claim any share in fees received by the attorney for services subsequently performed for the principals.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. J. W. BEACH, for the appellant.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by George V. Byrd, against Geo. R. H. Hughes, to compel an accounting and a division of certain property, which the defendant is alleged to have obtained for services as agent or attorney of certain parties who were residents of the State of Virginia.

To the bill the defendant interposed a general demurrer, which the court sustained, and rendered a decree dismissing the bill, to reverse which the complainant has taken this appeal. The question therefore presented is, conceding the averments of the bill to be true, is appellant entitled to relief in a court of equity?

The bill alleges, that in the year 1858, appellant was a real estate agent in Chicago, and was employed by Wm. T. Turner and John A. Washington, of Virginia, who were the owners of valuable real estate in Chicago, and then investing money in Cook county, and that he became their agent and confidential adviser; that Richard T. Merrick, Esq., then a distinguished lawyer of the Illinois bar, was retained by said Turner and Washington as their professional adviser; that appellant occupied the same office with Hughes, who was an attorney at law; that while said complainant acted as agent, aforesaid, of said Turner and Washington, in and about their said purchases and the settling of the title and terms of purchase to the same, he employed said Hughes as his attorney from time to time in and about the property, but said Hughes importuned the said complainant that he would procure for said Hughes a retainer direct from said Turner and Washington, and that he would associate said complainant with him in the said business and agency, and that if complainant would do so, he, said Hughes, would in no way interfere to remove, supersede or supplant said complainant in and about his said agency, and that he would treat complainant fairly, and pay complainant a fair proportion of the profits arising out of the said appointment and association, and that he, the said Hughes, then and there, at the county aforesaid, promised and agreed to and with the said complainant, that he, the said Hughes, would account to and with, give and pay complainant therefor, and as payment and consideration therefor, as aforesaid, one-half part of all and singular of whatever sum or sums of money or property or other thing of value should be received by the said Hughes, or be paid by the said Turner and Washington, or either of them, to the said Hughes, by way of and for said retainer and fee, and one-half of all and singular of whatever sum or sums of money or property should be received by, or paid to, the said Hughes, by (or from) the said Turner and Washington, or either of them, as compensation and otherwise, for and by reason of and on account of his employment as attorney at law or solicitor or agent, by the said Turner

and Washington, in or about the estate and business and property of the said Turner and Washington, or either of them, herein mentioned, all of which said promises and agreement so made by the said Hughes to the said complainant, as aforesaid, (by the said Hughes), was, by the said complainant, then and there agreed to and fully accepted by the complainant, and fully understood and mutually agreed to and accepted by the said complainant and the said Hughes; that in pursuance of said promise, and relying on the good faith and friendship of said Hughes, and relying on the intimacy and the confidence growing out of their said relation as attorney and client, and not suspecting any treachery on the part of said Hughes, he, the said complainant, (in that behalf made, in consideration of the promises and undertakings and agreements of the said Hughes to pay and recompense therefor, as aforesaid,) did write letters to the said Turner and to the said Washington, recommending a change of attorneys from the said Merrick to the said Hughes, and upon using all fair arguments in the premises, he at last induced said Turner and Washington to employ said Hughes as their attorney and confidential adviser in and about said real estate, and suits growing out of the same for the purchase money, and to associate said Hughes with him in said agency, all of which was well known to said Washington and Turner, and fully ratified and confirmed by them; that in consequence of said new relation, said Hughes was brought in contact with said Turner and Washington, and did win their confidence, and by reason of his opportunities and superior knowledge of the law, won their esteem and regard, and so fraudulently abused the trust and confidence placed in him by the complainant, as aforesaid, as to disparage complainant in the good opinion of his said principals (the said Turner and Washington), and they, fraudulently, were induced by said Hughes to wholly ignore said complainant, and constitute said Hughes as their agent, to the exclusion of complainant, who was in the receipt of a fair revenue (by reason of his said agency) from said Turner and Washington, with a fair prospect of a further increase, and said complainant

became wholly deprived of said profits, both present and prospective.

The bill then alleges, that Washington and Turner purchased a certain tract of land in Cook county, from Wm. B. Ogden; that Ogden sued them for $35,000; that a judgment was recovered, in the U. S. Circuit Court, for $36,481.66.

The bill further alleges an appeal to the Supreme Court, the retaining of Hughes by Washington and Turner, and the subsequent death of Washington; that afterwards the executor of the estate of Washington, and Turner, made a contract, in writing, with Hughes, by which the latter was to prosecute said appeal at his own expense, and take charge of the property, and have one-third of the land, or its proceeds, for his services.

The bill then alleges, that Hughes realized profits, in the aggregate, amounting to $300,000, out of the agreement, after long litigation, terminating in 1875, and asks that Hughes may be required to divide the same with the complainant.

The first question presented by the allegations of the bill is, whether the contract which the complainant seeks to enforce, is based upon a consideration that a court of equity can sanction and uphold.

The transaction, when properly analyzed, is this: The complainant was the agent and confidential adviser of Turner and Washington, who resided in Virginia, and had large real estate interests in Chicago. They had in their service a distinguished lawyer in Chicago, to attend to such legal business as would necessarily grow out of the money they had invested and were investing in Cook county.

The complainant, whose duty it was to guard and protect the interests of Turner and Washington, whose agent he was, and give them honest advice, and not place himself in a position where there would be a conflict between duty on the one hand, and self-interest on the other, in utter disregard of these well known and wholesome principles, entered upon the task to induce his principals to discharge their attorney and employ, in his stead, the defendant. What was the object?

12—84TH ILL.

Surely not to enhance the interest of his principals, because he concedes they had in their service an attorney of skill and learning. But the sole object was, that he might obtain one-half of all fees the attorney might earn in the transaction of his principals' business. The complainant, as we learn from the bill, at last succeeded in inducing his principals to discharge their attorney and employ the defendant, and now, as the attorney refuses to divide the fees thus earned of appellant's principals, he calls upon a court of equity to enforce his illegal contract.

We are aware of no principle of equity jurisprudence which would allow a court of equity to lend its aid to assist the complainant in the collection of fees earned under a contract based, as this one is, upon a consideration immoral and illegal. A contract based upon an illegal consideration could not be enforced in a court of law, much less would a court of equity, where a complainant is required to come into court with clean hands, enforce the performance of a contract founded upon an illegal consideration.

But, even if the contract set up in the bill rested upon a valid consideration, we perceive no ground upon which the bill could be maintained. Suppose the defendant was associated with the complainant in the agency, and retained as the attorney of Washington and Turner, under an arrangement that he would divide fees with the complainant,—when Washington and Turner discharged the complainant, that terminated the arrangement.

The contract was in the nature of a partnership which might be terminated at such time as either party saw proper to withdraw. It is true, neither withdrew, but Washington and Turner terminated the arrangement by discharging the complainant from the management of the business. The mere fact that they saw proper, after complainant was no longer an agent, to enter upon a new contract with the defendant, under which he performed service and earned large fees, can be no ground for allowing the complainant to come in and share with him.

It is not claimed, in the bill, that fees were earned while the complainant was acting in connection with the defendant, and have not been accounted for, but the complaint is, fees were earned long after complainant had been discharged from the business, under a written contract the defendant made, to which the complainant was an utter stranger.

We perceive no ground upon which the bill can be sustained. The decree will, therefore, be affirmed.

*Decree affirmed.*