## THOMAS TINSLEY V. H. C. PENNIMAN.

### No. 1053.

1. **Contract—Construction—Duty of Court to Construe.**

A written instrument executed by P. acknowledged the receipt from T. of $1000, to be applied by P. in the purchase of a certain patent right, and recited further: "It is agreed that T. is to have one-third interest in the above purchase, the remaining two-thirds to belong to P., and for and in consideration of T.'s advancing the above $1000, I promise to return to T. the aforesaid $1000, with interest, on or before ninety days." Held, that the contract was not in any sense ambiguous; that P. was not entitled under it to charge T. with one-third of said amount; that T. was entitled to recover from P. the full amount named, with interest, and that it was the duty of the court to ·so charge the jury, without leaving the construction of the contract to them.

2. **Agent's Commissions—Charging Both Buyer and Seller.**

Where a real estate broker represents the buyer, and, without the knowledge of the buyer, also represents the seller, and receives a commission from the seller by virtue of an agreement to that effect entered into before the sale was made, he cannot recover commissions of the buyer.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*H. C. Coke* and *G. G. Wright,* for appellant.—1. Where there is no ambiguity in an instrument of writing, evidencing a contract between parties, and it is susceptible from its face of a legal construction, it is the duty of the court in instructing the jury to construe the meaning of the instrument of writing. Belcher v. Mulhall, 57 Texas, 17; Bruner v. Strong, 61 Texas, 555; Wright v. Hays, 34 Texas, 253; Smith v. Garrett, 29 Texas, 48.

2. Where there is nothing to change in any manner the plain terms of a written contract, the parties thereto are to be bound according to the terms of the written obligation. Hunt v. White, 24 Texas, 643; Wooters v. Railway, 54 Texas, 294; Bingham v. Talbot, 51 Texas, 450; Rody v. Kingsbury, 5 Texas, 152; Grinnan v. Dean, 62 Texas, 218.

No brief for appellee reached the Reporter.

LIGHTFOOT, CHIEF JUSTICE.—Appellee has filed no brief, nor has he made any appearance in this court. The statement of the case by appellant is adopted, as follows: "Appellee, H. C. Penniman, brought this suit against appellant, Thos. Tinsley, to recover a balance of $1080.78, alleged to be due him for certain labor and services in and about the negotiation and making certain purchases and sales of divers real estate and properties in and about the city of Dallas, Texas, and in

procuring the tenants for and renting said property and collecting rents. and paying taxes thereon, giving attendance and attention about the business of said defendant, and advancing money for him as itemized in exhibit attached to plaintiff's petition.   That said services were performed at the time specified and were reasonably worth the sums of money charged therefor; that the sums of money were advanced and paid out at the times specified.   Said services so performed and moneys. so advanced and paid out were reasonably worth the sums of money charged therefor, aggregating $2604.78.   That the credits given appellant in said specified account left a balance due appellee of $1080.78. The part of the itemized account that affects this suit is the following:

To 5 per cent commission on purchases of the following real estate:

Feb'y 15, 1885—50 feet on Main Street, bought of Bryan for $4500 ..........................................$212.50

March 17, 1886—5 acres, bought of Mr. Elliott, $1500.... 75.00

March 22, 1886—23 acres, bought of Mr. Carns, $4500... 225.00

March 22, 1886—75 feet on Main St., bought of Mr. Lively, for $10,000 ...................................... 500.00

To 5 per cent commission on sales of the following property:

March 27, 1887—Bought of Mr. Carns, and sold to Luther Rees, for $8500...........................................$425.00

May 10, 1887—5 acres, bought of Mr. Elliott, and sold to Mr. Coleman for $3000........................................ 150.00

Tinsley's share on patent right in vapor burner.......... 333.33

and interest on said amounts.

"Appellant Tinsley plead a general demurrer and general denial, and specially answered by way of cross action and counter claim to plaintiff's cause of action, and says that it is a fact that appellee received a commission from Mr. Bryan, through Mr. Clark, for services in selling to appellant the Bryan property.   That appellee purchased the Elliott five acres from Mr. Elliott for the sum of $1350, and then sold it to appellant for $1500, and had the conveyance made direct from J. T. Elliott to appellant.

"That appellee received a commission from Mr. Carns, through Prather & Ardrey, for services in selling to appellant the 23 acres of Carns' land; that appellee received a commission from Lively, through Cooper, Robertson & Reynolds, for services in selling to appellant the 75 feet of land on Main Street, known as the Lively property.   That appellee charges appellant with commissions for purchasing said land, which is double commission, and is against good conscience and public policy.   Then set up a claim of indebtedness against appellant on a written obligation for $1000, with interest at 12 per cent per annum, and that all of the property owned by appellant in· Dallas County,

Texas, upon which appellee claimed a commission for purchasing land, was purchased by appellant, and appellee had nothing whatever to do with the purchases. Appellee sold a lot of land for appellant for $2893.34, cash, and two notes, each for the same amount, and placed a credit of $48.50 on one of the notes, making the sum of $3881.84 that appellee received on said transaction for appellant, of which last amount appellee accounted to defendant for the sum of $2639.62, in which accountings appellee charged appellant a commission of $12.50, leaving a balance due appellant on said transaction of $242.22.·

"Appellee sold for appellant a lot of land to one C. P. Coleman, June 6, 1887, for $1500 cash, and a note for $1500, and accounted to appellant for the sum of $942, in which accounting appellee charged appellant a commission of $150, leaving a balance of $558 due appellant on said transaction.

"That appellee collected rent for appellant from July 1, 1886, to July 11, 1887, to the amount of $816, and accounted to appellant for the sum of $617.60, leaving a balance due appellant on the last account the sum of $198.40.

"All of which amounts aggregate the sum of $1998.62, for which amount appellant asked judgment, with interest, and then plead that appellant had a settlement with appellee on or about the 10th day of June, 1886, of all matters up to that date, and appellee paid to appellant $138.30, in which settlement appellant paid appellee the sum of $4.50 for cleaning a water closet, which appellee set up against appellant in this suit, which settlement appellee plead as an estoppel. That said cause was, on January 5, 1893, tried by a jury, and resulted in a verdict and judgment in favor of appellee for the sum of $956.38.

"Appellant filed a motion for a new trial, which motion was by the court, January 30, 1893, overruled, to which ruling of the court appellant excepted, and in open court gave notice of appeal, etc., and has perfected this appeal."

The second assignment of error is as follows: "The court erred in the following portion of its charge, to-wit: 'With reference to the claim or demand of the plaintiff, Thomas Tinsley, as set out in his cross-bill for $1000, relating to the purchase of the gas burner, you are told that it is for you to determine from the evidence before you what was the mutual understanding and agreement between them; that is, whether by said agreement and understanding the plaintiff Penniman owes the entire amount, or whether the defendant Thomas Tinsley should pay or account to Penniman for one-third of said sum,' because the claim here referred to was evidenced by a contract in writing between the parties, and it was the duty of the court to construe the written instrument, and because there was no evidence, except the writing, as to what the understanding and agreement between the parties was."

Appellant's first proposition under this assignment, and which is clearly well taken, is as follows: "Where there is no ambiguity in an instrument of writing evidencing a contract between parties, and it is

susceptible from its face of a legal construction, it is the duty of the court in instructing the jury to construe the instrument of writing."

The only proof about the instrument of writing was the instrument itself, which is as follows: "Dallas, Texas, the 15th March, 1886. Received of Thomas Tinsley his check on the State National Bank of Waco for one thousand dollars ($1000.00), to be applied by me in the purchase of the patent right for Texas of a patent oil stove burner from Peck of Chicago, who is patentee. It is agreed that Tinsley is to have one-third interest in the above purchase of patent right, and the remaining two-thirds to belong to H. C. Penniman; and for and in consideration of Thomas Tinsley's advancing the above $1000, I promise to return to the said Tinsley the aforesaid $1000, together with interest at 12 per cent per annum until paid, on or before the expiration of ninety days from date hereof.                         H. C. Penniman."

The written contract is plain, and not in any sense ambiguous. Under it appellant was entitled to recover the $1000, with interest, and the jury should not have been left to find from any other source a different meaning. Brunner v. Strong, 61 Texas, 555.

2. Appellant's third and fourth assignments of error are as follows: (3) "The court erred in that portion of its charge which is as follows: 'If from the evidence you find or believe that Penniman was the agent of Tinsley in the purchase of the property as alleged by him, and you further find and believe that at the same time and in the same purchase he was the agent of the parties selling the property to Tinsley, and received a commission, and has been paid by these parties, and you further find that Tinsley had no knowledge of this fact, and did not assent to the same, then, in such an event, Penniman can not recover. But if you find that in the purchase of the property by Tinsley, Penniman was his agent, and was not the agent of the parties selling to Tinsley, or if you find that he was the agent of the said parties, as well as of Tinsley, in making the sale, and was paid by the parties selling a commission, and this fact was known to Tinsley, who did not object to the same, then Penniman would be entitled to recover,' because there was no evidence that Tinsley had any knowledge of or assented to Penniman's receiving a commission from the parties adversely interested to Tinsley, or that he was given an opportunity to object to it."

"(4) The court erred in that portion of its charge wherein it told the jury, 'if you find that Penniman was the agent of Tinsley in making the purchases of the property, and was not the agent of the party selling, and from the evidence you find that the agents of the party selling, after making the sales to Tinsley, voluntarily gave or divided with Penniman a part of their commission, then this would not be such a course of dealing as would prevent a recovery by Penniman, whether this fact was known to Tinsley or not;' because there was no evidence of a voluntary division of commissions, the uncontradicted evidence being that they were divided pursuant to contract between Penniman and the person representing an interest adverse to Tinsley, made prior to the making

of the transactions for which commissions were paid, and that said Penniman was paid and received his portion of the commissions for his services rendered to the persons adversely interested to said Tinsley."

The appellee Penniman testified in reference to the property bought from Mr. Bryan through Wesley Clark by appellant, that he was paid $50 for his services by Wesley Clark in making the sale to Mr. Tinsley. That he made the trade with Mr. Clark to assist him in selling the property to Mr. Tinsley prior to the date of the deed, and that he used his influence to get Tinsley to take the property, for which he was paid $50 by Wesley Clark, and charged appellant 5 per cent commission for buying.

On this transaction he claimed from appellant the sum of $212.50 for buying. The witness Wesley Clark stated that he sold Mr. Tinsley some property on Main street in Dallas, Texas, in February, 1885, for and on account of J. H. Bryan. That he was at that time acquainted with Penniman, the appellee herein, and had known him ten or twelve years; that Tinsley, in February, came to his office alone, and after introducing himself, made inquiry of the sale of two lots on Main street, Dallas, Texas, being the east half of lot number 5 and west half of lot number 4, in block number 122, owned by J. H. Bryan, and intimated the desire to buy some property. That he gave to Mr. Tinsley the price, and that he went out, saying that he would call later. Penniman went to the witness and told him that he could control Tinsley, and that if he would charge Bryan a good commission and divide it with him, Penniman, he would sell Tinsley the Main street property; otherwise he would locate Tinsley on another piece of property where a good commission could be had. Clark's reply was, that he was not a real estate agent, and that as to Bryan's matters, he acted as manager, and that in their arrangements, he could not make any charge on Bryan's account for commissions as real estate agent for selling the property; but that his relations in Bryan's matters was such that he could pay him, Penniman, for selling and influencing Tinsley to buy. Penniman asked him if he would give him one hundred dollars. Clark told him, Penniman, no; that he had priced the property very low to Mr. Tinsley, and that he did not feel that he could charge Bryan's account with that much. Clark told Penniman that he would give him $50 for his services, which Penniman agreed to take. Tinsley called again alone, and after some talking agreed to buy. Tinsley went off and came back with the deeds and notes, all written. After the matter was closed, Penniman went to Clark's office for the $50, which Clark paid Penniman, and charged to Bryan's account as paid Penniman in the Tinsley trade. After Clark paid Penniman, Penniman requested Clark very especially not to say anything about having paid him, Penniman. Clark sold the property direct to Tinsley. While Penniman professed such influence over Tinsley, Clark agreed to give him $50 for his assistance. Whether Penniman was ever of any assistance to Clark or not, was more than Clark knew. Tinsley and Pen-

niman were never together, and what Penniman did in this matter was never seen by Clark.

Penniman testified that he did not tell Mr. Tinsley that he was receiving a commission from the other side for buying and selling the property; he had nothing to do with that, and he, Penniman, told him, Tinsley, nothing about it, as it was none of Tinsley's business; that he did not tell him anything about the terms of buying and selling, as it was none of Tinsley's business to know anything about it, and nothing was ever said to him, Tinsley; did not know that he, Penniman, was receiving a commission from the other side in making these sales and purchases; most emphatically he did not tell Tinsley anything about it.

Tinsley testified that he did not know in these various real estate transactions that Penniman was receiving a commission from the other side. Wesley Clark testified that the $50 he paid Penniman was under a contract made with Penniman to get Penniman's influence with Tinsley to consummate a trade. W. H. Prather testified that the commission he paid Penniman was under an agreement with Penniman as to how much he would pay him in the event Tinsley bought the property.

J. T. Elliott testified in reference to the Elliott piece of property, that he had sold the property to Mr. Penniman for $1350, or rather Penniman had an option on it for that much; that Penniman closed the option with him some time before the deed was made to Tinsley. After he closed the option, Penniman requested Elliott to make the deed to Mr. Tinsley for $1500; that Elliott sold the property for $1350, and recited the consideration in the deed from himself to Tinsley to be $1500.

Penniman testified that he received a commission from all the parties adverse to Tinsley under an arrangement and contract made between him and them prior to the consummation of the various transactions.

In the case of Armstrong v. O'Brien, 83 Texas, 648, Judge Garrett, in an able opinion which was approved by the Supreme Court, said: "It is well settled that a person can not act in the capacity of agent for both buyer and seller, and receive commissions from both; and from principles of public policy, such an agent would not be allowed to recover commissions from either party, unless he should so act with the full knowledge and consent of both parties; and about this exception there is conflict of authority. It makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith. Mech. on Agency, secs. 598, 67, 643 and 644. . . . There was evidence tending to show that Dart was acting for O'Brien & John in assisting them to obtain a purchaser for the land, and that there was an agreement between them to divide commissions, which were to be collected both from the executors, who were the sellers, and from Lutcher & Moore, who were the buyers; and the charges requested should have been given. Walker v. Osgood, 98 Mass., 348. It would not be necessary that Lutcher & Moore should know that they were paying a commission for the purchase, if it was in fact

added to the price fixed on the land by the executors, to be shared in by the agents who were effecting the sale. Nor can a person be both party and agent, and it would be inconsistent with O'Brien's duties to his principals to sell the land to himself and Dart, or to Dart alone, if Dart was acting in the capacity of agent with O'Brien, and then to resell them, to Lutcher & Moore for a profit or commission." See also, Association v. Parham, 80 Texas, 526; Yellow Pine Lumber Co. v. Carroll, 76 Texas, 135; Smith v. Moseley, 74 Texas, 631; Smith v. Tripis, 21 S. W. Rep., 722; Rice v. Wood, 113 Mass., 133 (18 Am. St. Rep., 459); Raisen v. Clark, 41 Md., 158 (20 Am. St. Rep., 66); Lynch v. Fallon, 11 R. I., 311 (23 Am. St. Rep., 458); Farnsworth v. Hemner, 1 Allen, 494 (79 Am. Dec., 756).

In Lynch v. Fallon, above, the Supreme Court of Rhode Island says: "As agent for the vendor, his duty is to sell at the highest price; as agent for the vendee, his duty is to buy for the lowest; and even if the parties bargain for themselves, they are entitled to the benefit of the skill, knowledge and advice of the agent, and at the same time to communicate with him without the slightest fear of betrayal, so that it is hardly possible for him to be true to the one without being false to the other. The claim to charge commissions to both parties is so unreasonable that it can not be justified by any custom or usage. Farnsworth v. Hemmer, 1 Allen, 494; Walker v. Osgood, 98 Mass., 348; Pugsley v. Murray, 4 E. D. Smith, 245; Everhart v. Searle, 71 Penn. St., 256; Raisin v. Clark, 41 Md., 158; Schwartz v. Yearly, 31 Md., 270; Morrison v. Thompson, L. R., 9 Q. B., 480.

"It is estimated in Pugsley v. Murray, 4 E. D. Smith, 245, that the rule only applies where the broker conceals the double employment; but other cases rest the invalidity of the contract upon broad grounds of public policy, and hold that it can not be enforced even against a party who, knowing that the broker is already employed, promises expressly to pay him for his services. Thus, in Everhart v. Searle, 71 Penn. St., 256, the defendant, knowing the plaintiff had the property for sale, agreed to pay him $500 for assisting him to negotiate the purchase of it, and it was held that the plaintiff could not recover on the contract. 'The transaction,' say the court, 'is to be regarded as against the policy of the law, and not binding on a party who has a right to object to it.'

"In Raisin v. Clark, 41 Md., 158, it was held that the broker could not recover of the party who last employed him, even though the double employment was known to both parties, and the party who first employed him had paid his commission. The court say: 'The rule forbids the court to entertain an action founded upon such a contract. . . . It is perhaps possible for the same agent to serve both parties to such a transaction honestly and faithfully; but it is very difficult to do so, and the temptation to do otherwise is so strong that the law has wisely interposed a positive prohibition to any such attempt.' And see Story on Agency, secs. 210, 211."

In this case it is clear to us from the testimony contained in the record, that Tinsley had no knowledge of the fact that Penniman was getting a commission from the parties adversely interested, and had thus expected a commission from them, which consideration virtually placed him upon their side of the trade; we therefore hold that the third and fourth assignments of error above are well taken.

It is also manifest from the testimony that the commission which Penniman obtained from the opposite party was not a mere gratuity bestowed upon him after the consummation of the trade, but was a consideration exacted by Penniman from said parties before he would allow the trade to be consummated with Tinsley. It is true, Mr. Penniman testified that he told Mr. Tinsley nothing about this, and that it was none of his business. To this we feel constrained to dissent. It certainly was Tinsley's business, and he had the right to expect from his agent the most perfect good faith, and that he should act for him, and for him alone, if he expected remuneration from him.

3. The sixth assignment of error is as follows: "The court erred in refusing special charge number 4 asked by defendant, because the written contract was the only evidence of the matter referred to in said charge, and under that contract plaintiff can not recover the $333.33 claimed by him."

The fourth special charge referred to is as follows: "Plaintiff can not recover the $333.33 claimed for one-third of water or oil stove burner contained in the account; the contract in evidence shows that the defendant was not to be thus bound."

The written contract between Penniman and Tinsley in regard to the patent oil stove burner is set out above; and according to this contract, Penniman had no right to demand of Tinsley the $333.33, and the court erred in refusing to give the requested charge.

There are other questions raised by appellant, but we think the errors complained of are such as will not probably arise upon another trial.

For the errors indicated, the judgment is reversed and the cause remanded.

<em>Reversed and remanded.</em>

Delivered February 8, 1896.