## PLOTNER v. CHILLSON & CHILLSON.

No. 2030, Okla. T.    Opinion Filed May 15, 1908.

(95 Pac. 775.)

1.  **BROKERS—Purchase of Realty—Right to Double Commissions.**
    It is a condition precedent to the right of an agent to the compensation agreed to be paid him that he shall faithfully perform the services he undertook to render, and if he, when employed to buy, unknown to his principal, accepts compensation from the vendor by dividing commission with his agent in the transacton, he cannot recover compensation agreed to be paid him by his principal.

2.  **SAME—Evidence.** In an action by a principal against his agent to recover in part certain commission alleged to have been erroneously paid, where upon answer and counterclaim for the balance of said commission the original action is dismissed and the cause is tried to the court upon the counterclaim and answer thereto, and where the evidence adduced on the part of the plaintiff shows that defendants, while acting as his agent in the purchase of certain lands, at the same time and unknown to him, received a commission on the sale from the agents of the vendor, sufficiently proves a defense to the action on the counterclaim, and a demurrer to such evidence was improperly sustained.

(Syllabus by the Court.)

*Error from District Court, Canadian County; C. F. Irwin, Judge.*

Action by A. A. Plotner against Chillson & Chillson. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

On October 18, 1905, A. A. Plotner, plaintiff in error, plaintiff below, sued M. D. Chillson and Charles Chillson, partners as Chillson & Chillson, defendants in error, defendants below, in the district court of Canadian county, to recover, among other things, $7,500 alleged to have been paid them as commission on the purchase of certain lands in Matagorda county, Tex., as agents for plaintiff, and which is alleged to have been forfeited for the reason

that while acting as agents for plaintiff they were, unknown to him, at the same time acting as agents for and received a commission from the vendors in that transaction.

Defendants for answer in effect admit the contract of agency, and that they acted as such for plaintiff in the purchase of the land, but deny that they acted as agents for the vendors or received a compensation or commission from them; that in order to close up said deal and settle the 25 per cent. commission thereon, together with the salaries stipulated for in said contract of agency, plaintiff agreed to pay them $7,500 in full, but that in fact had only paid $5,000 of that amount on September ·1, 1903; that the remaining $2,500 is due them with interest from that date, and on said $7,500 from May 19, 1902, to September 1, 1903, at 7 per cent. per annum, for which they pray judgment.

Plaintiff for answer to defendants' counterclaim pleads, in substance, a general denial, and alleges that if the $2,500 was due at all it was as the share of Charles Chillson of the firm of Chillson & Chillson in said commission, and that he had since released the same to plaintiff, and restates the charge that defendants acted as agents for both buyer and seller of the land in question without the knowledge of plaintiff, and received from the seller a commission on the sale of said lands to plaintiff in the sum of $5,466, by which conduct, he alleges they forfeited the right to recover said $2,500 as commission from him, or any other amount.

On May 24, 1906, plaintiff dismissed his cause of action, and the cause came on for hearing to the court by agreement of parties upon the "set-off and the counterclaim set forth in defendants' answer." It being agreed that the burden was upon the plaintiff, he proceeded to offer testimony in support of the issues on his part, and after having rested his case, defendants demurred to the evidence, which was sustained by the court and exceptions saved, and judgment rendered in favor of defendants and against the plaintiff for $2,968.20 and the the costs of the suit, from which judgment plaintiff has appealed to this court.

*W. W. Wallace,* for plaintiff in error.

*Joseph G. Lowe* and *J. W. Clark,* for defendants in error.

TURNER, J. (after stating the facts as above). The only alleged error necessary for us to consider is that the court erred in sustaining defendants' demurrer to plaintiff's evidence. In considering this assignment of error, it will be remembered that the rule of law is that:

"A demurrer to the evidence not only admits the facts as proved to be true, but admits such facts as may be reasonably and rationally inferred from the facts proved. If there is evidence fairly tending to show each material averment of the petition, it is error to sustain a demurrer to plaintiff's evidence." (*Myers v. Presbyterian Church of Perry,* 11 Okla. 551, 69 Pac. 876; *Jaffray v. Wolf,* 1 Okla. 312, 33 Pac. 945; *Edmisson v. Drumm-Flato Commission Co.* 13 Okla. 440, 73 Pac. 958; *Johnson v. Hayes,* 6 Okla. 582, 55 Pac. 1068.)

Let us, then, determine whether plaintiff has adduced sufficient proof to establish his allegation that defendants, while acting as his agents in the purchase of the land in question, were acting, unknown to him, as the agent of the vendors, and that they received from them a commission as such. The testimony discloses that plaintiff was an elderly man, retired from business, living at Dayton, Ohio; that defendants, father and son, were living in Canadian county, Okla., and were the brother-in-law and nephew of plaintiff; that in the early 70's defendant M. D. Chillson, being then at work on a small salary, asked and obtained leave of the plaintiff to go to Nebraska and there act as plaintiff's agent in the care and management of some 6,000 acres of land owned by the plaintiff. In the course of years Chillson continued to do business for plaintiff, and it seems of recent years came to Canadian county, Okla., where he continued to buy and sell land as his agent. Their dealings were never satisfactory to plaintiff. Plaintiff found upon investigation of Chillson's books, through his bookkeeper, sent to Chillson for the purpose, that Chillson had sold some desirable farms belonging to plaintiff and had rein-

vested the money in less desirable farms and had the deeds made out in his own name; that when he wrote to Chillson about deeding them back to him, under date of September 27, 1900, plaintiff soon thereafter received a reply that: "The farms mentioned cost $13,840. I consider it equitable if I retain them and a few thousand dollars besides." Negotiations followed, resulting in the following contract between them:

"DAYTON, Ohio, Jan. 4, 1901.
"DEAR MERRICK:

"Yours of the 19th containing deeds as mentioned reached me in due time. In order to avoid any further or future misunderstanding as to remuneration, I will here repeat the proposition that I made to Charles while here; i. e., that you receive $10,000 in full for services up to July 4, 1900, and from that date you are to draw a remuneration of $1,200 per year, and 2 per cent. on sales of land, and in addition to that Charles will receive $800 per year and 1 per cent. on sales of land, and in case any speculative transactions are made Chillson & Chillson will receive 25 per cent. of the net profits on the same.

"[Signed]                              AMBROSE."

Acting under this contract, M. D. Chillson in the spring of 1902 went to Bay City, Tex., and negotiated for plaintiff a purchase of some 23,000 acres of land of W. E. Austin & Co., as agents for one Kuykendall and others. In the course of the negotiations Chillson told W. E. Austin & Co. that he was a land agent himself, and from extensive experience he knew that divisions of commissions were frequently made, and that as a matter of professional courtesy this had been conceded to him in all purchases he had made, and he had come to require it and would not make a purchase without it, which W. E. Austin & Co. agreed to give him, for the reason, as they stated, that "half a loaf was better than no bread." Accordingly the land was bought and deeded to plaintiff and one Stoddard in consideration of something like $330,000, the exact amount not being material, which he paid, Chillson receiving on a division of commissions with W. E. Austin & Co. something like $5,000, the exact amount being unknown

and immaterial. Some time during the summer of that year plaintiff and defendants had a settlement of this matter. Plaintiff, not wishing to be annoyed with any 25 per cent. of net profits to be paid defendants on this deal, proposed, and defendants agreed to accept, $7,500 as their commission, $5,000 of which was to be paid to M. D. Chillson, the remaining $2,500 to his son, Charles Chillson. Accordingly, on August 29, 1903, at the request of M. D. Chillson, plaintiff sent to the First National Bank of Springfield, Ohio, and paid $5,000, and took up a note for that amount due from M. D. Chillson to the bank, and received the following receipt:

"Received from A. A. Plotner the sum of seventy-five hundred dollars ($7500.00) as commission in full for 25 per cent. net profit on lands purchased for his account in Matagorda county, Tex.

"[Signed]      CHILLSON & CHILLSON,
         "By M. D. CHILLSON."

The remaining $2,500 was never paid Charles Chillson, for the reason that in February, 1904, he came to Dayton to see plaintiff, and there stated that at the time of the payment of the $5,000 to his father he thought it was all right, but since that time had concluded not to accept the $2,500 for his share, as he did not think it was right and he would not have it. This led plaintiff to investigate, which he did, and about the middle of March following ascertained positively for the first time that Chillson & Chillson had acted as agents of the vendors in the transaction, he having suspected as much September 1, 1903, at which time he had discharged them from his service.

The question then presents itself under this state of facts, which are undisputed, are defendants entitled to recover in this cause? We think not. Defendants were under obligation to plaintiff to buy this land for the lowest price consistent with honesty. W. E. Austin & Co. were under obligations to the vendors to get for it the best price fairly obtainable. In making this agreement with W. E. Austin & Co. to divide their commission with

defendants before they would buy defendants very well knew that the more they gave for the land the greater amount of money they would get on such division of commission with W. E. Austin & Co. This was a palpable fraud on the plaintiff, a violation of the contract of agency, a betrayal of trust, was against public policy, and forfeited defendants' right to commission from plaintiff in the transaction. This is well settled by the authorities.

In *McKinley v. Williams,* 74 Fed. 95, 20 C. C. A. 313, the court said:

"To permit the agent of a vendor to become interested as the purchaser or as the agent of a purchaser in the subject-matter of the agency inaugurates so dangerous a conflict between duty and self-interest that the law wisely and peremptorily prohibits it. An agent of a vendor, who speculates in the subject-matter of his agency, or intentionally becomes interested in it as a purchaser or as the agent of a purchaser, violates his contract of agency, betrays his trust, forfeits his commission as agent, and becomes indebted to his principal for the profits he gains by his breach of duty." (Citing numerous authorities.)

The same is unquestionably true as to the agent of the vendee. In *Campbell v. Baxter,* 41 Neb. 735, 60 N. W. 91, the court, quoting approvingly from a number of cases, said:

"* * * In *Rice v. Wood,* 113 Mass. 133, 18 Am. Rep. 459, * * * it was held: 'A broker acting for both parties in effecting an exchange of property can recover compensation from neither, unless his double employment was known and assented to by both.' *Walker v. Osgood,* 98 Mass., 348, 93 Am. Dec. 168. In *Bollman v. Loomis,* 41 Conn. 581, it was held: 'The policy of the law forbids that a person acting as the friend and confidential adviser of a purchaser should at the same time be secretly receiving compensation from the seller for effecting the sale, and a contract for such compensation is void.' In *Meyer v. Hanchett,* 43 Wis. 246, it was held: 'One cannot act as agent for both seller and purchaser, unless both know of and assent to his undertaking such agency and receiving commissions from both.' *Holcomb v. Weaver,* 136 Mass. 265; *Byrd v. Hughes,* 84 Ill. 174, 25 Am. Rep. 442; *Atlee v. Fink,* 75 Mo. 100, 43 Am. Rep. 385; *Scribner v. Collar,* 40 Mich. 375, 29 Am. Rep. 541."

In *Wadsworth v. Adams*, 138 U. S. 380, 11 Sup. Ct. 303, 34 L. Ed. 984, the court in its syllabus said:

"It is a condition precedent to the right of an agent to the compensation agreed to be paid to him that he shall faithfully perform the services he undertook to render; and if he abuses the confidence reposed in him, and withholds from his principal facts which ought, in good faith, to be communicated to the latter, he will lose his right to any compensation under the agreement, being no more entitled to it than a broker would be entitled to commissions who, having undertaken to sell a particular property for the best price that could be fairly obtained for it, becomes, without the knowledge of the principal, the agent of another, to get it for him at the lowest possible price."

In *Bell v. McConnell,* 37 Ohio St. 399, 41 Am. Rep. 528, the court said:

"Unless the principal contracts for less, the agent is bound to serve him with all his skill, judgment, and discretion. The agent cannot divide this duty and give part to another. Therefore, by engaging with the second he forfeits his right to compensation from the one who first employed him."

See, also, *Chapman v. Currie,* 51 Mo. App. 40; *Tinsley v. Penniman,* 12 Tex. Civ. App. 591, 34 S. W. 365; *R. W. Raisin v. Rosa A. Clark,* 41 Md. 158, 20 Am. Rep. 66; *Collins v. McClurg,* 1 Colo. App. 348, 29 Pac. 299; *Hunter Realty Co. v. Martha Spencer, ante,* p. 155, 95 Pac. 757.

The law thus announced is conceded by defendants, but it is urged that the same is not applicable; that this " * * * is not a question of commission on the sale or purchase of land that is involved in the controversy, but it is what was the amount agreed upon as 'net profits' on the 'speculative transaction' in the purchase of the Matagorda, Tex., land." It in effect is contended that defendants were not so much agents working on a commission derived from the purchase of this land as they were "partners" buying land and deriving their compensation in "net profits" after purchase and sale. The usefulness of this distinction fails to appear. In either event they would be agents of plaintiff, receiving a compensation from him, and owing to him in return

unswerving loyalty to his interests in the transaction. Anything short of that violated the contract existing between them and forfeited their right to compensation, whether the same was to be paid as commission when the land was bought or "net profits" when the land was sold. But this record discloses that before a resale of the land, and therefore before any "net profits" had accrued to defendants, and before their disloyalty to the trust had been discovered, they agreed to take the lump sum of $7,500 "as commission in full of 25 per cent. net profit" on these lands, and $5,000 was paid. It is clear that it was paid "as commission," and that the remaining $2,500 sued for is also commission which has been forfeited as a result of defendants' misconduct, and cannot be recovered in this action.

It follows that the court erred in sustaining the demurrer to plaintiff's evidence, and for that reason the case is reversed and remanded, with instructions to enter judgment in favor of the plaintiff.

All the Justices concur.