## HUME v. BAGGETT & BAGGETT.
### (No. 6379.)

(Court of Civil Appeals of Texas. San Antonio. April 14, 1920. Rehearing Denied May 12, 1920.)

**1. Brokers ⬅⬆19—Broker must not put himself in position of divided loyalty.**

Loyalty to his trust is the first and absolutely indispensable duty that the agent owes his principal, so a broker must not put himself in such relation that his own interests or the interests of those he represents become antagonistic to those of his principal.

**2. Brokers ⬅⬆86(7)—Broker's concealment of relationship to party raises suspicion of fraud.**

Where one of the members of a firm of brokers engaged to effect an exchange of lands concealed from defendant that the party with whom the exchange was proposed to be effected was his father-in-law, the relationship raises a strong suspicion of want of good faith of the broker, and only slight circumstances are necessary to establish the same.

**3. Brokers ⬅⬆19—Broker must disclose conflicting interests though principal is not prejudiced thereby.**

Injury to the principal is not the test of whether a broker has been faithful to his trust, and it is the broker's duty, in any event, to disclose conflicting influences.

**4. Brokers ⬅⬆67(2)—Broker concealing double agency cannot recover commissions.**

Where brokers concealed from defendant the fact that they were also agents for the opposite party to the proposed exchange of lands and were to receive commissions from both parties, such brokers cannot recover compensation from defendant, who refused to carry out the transaction.

Appeal from Travis County Court; D. J. Pickle, Judge.

Action by Baggett & Baggett against J. W. Hume. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

Lindsay D. Hawkins, of Thurber, and E. R. Pedigo, of Austin, for appellant.

T. H. McGregor, of Houston, and E. C. Gaines, of Austin, for appellees.

FLY, C. J. Appellees sued appellant to recover the sum of $600, alleged to be due them as commissions for procuring a purchaser for certain real estate listed with them, in their business as real estate agents, for sale or for exchange for other property. The cause was submitted to a jury on eight special issues, and on the answers thereto the court rendered judgment in favor of appellees for $600.

The claim of appellees is based on efforts made by them to effect an exchange of property between appellant and Ed. Burleson, and the jury found that appellees brought the parties together for negotiations; that they reached a complete agreement to exchange their properties with each other; that each agreed to pay appellees the sum of $300; that appellant knew that Burleson was to pay one-half of the $600 commissions; that the exchange was not conditioned on the signing of the deed by appellant's wife; that appellant refused to comply with his agreement and Burleson was at all times ready, willing, and able to perform his part of the agreement.

The first assignment of error assails the judgment on the ground that Ed. Burleson was, at the time of the transaction, the father-in-law of C. L. Baggett, one of the appellees, and appellant knew nothing of such relationship. It is undoubtedly true that appellees were not mere middlemen, but were the agents of appellant to procure a sale or an exchange of his property for property owned by Burleson, who was the father-in-law of one of the appellees, and that fact was unknown to appellant. Appellees took part in the negotiations, and C. L. Baggett, the son-in-law of Burleson, was the agent active in the negotiations.

[1, 2] The only authority cited by appellant upon the question of the effect of undisclosed relationship between one of the parties to an exchange of properties, from each of whom the agent is claiming commissions, does not go to the extent of holding that the agent is thereby prevented from the recovery of commissions from the party not related to him, but merely that it is a badge of fraud.

"The law prohibits its judges and jurors from sitting in a case where relatives or members of their families are parties, because it will not place a person in a position of divided allegiance or duty. And while it takes no notice of private transactions until the same are brought before the courts, yet when a party comes into court and seeks to enforce the specific performance of a contract made through an agent, and it appears that such agent acted as the agent of both parties, and that the party seeking to enforce such contract is a relative, connection, or member of the family of such agent, the court will look with great suspicion and disfavor upon such claim, and it will only be allowed when it proves to be absolutely fair, free, and clear of misrepresentation or concealment." Morgan v. Hardy, 16 Neb. 427, 20 N. W. 337.

That was said in a case in which the stepdaughter of the agent sought to enforce a contract secured by the stepfather, who was acting for both parties, and the trial court denied an enforcement of the contract and that judgment was affirmed by the Supreme Court of Nebraska. Good faith, honesty, and fairness should always prevail in any transaction in which one man is acting for another, and there should be no concealment of any

⬅⬆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

matter that would probably influence the actions of the agent. That appellees were not acting in good faith with appellant is shown by the fact that the relationship with Burleson was not disclosed, and that C. L. Baggett wanted to obtain the sum of $7,000 from appellant as the difference between the property of appellant and that of Burleson, when he knew that Burleson was willing to accept $6,500. In other words, he was endeavoring to obtain $500 from appellant for his father-in-law. The son-in-law was the active agent in making all the arrangements. The very relationship raises a strong suspicion of want as to the good faith of the agent, and only slight additional circumstances are necessary to establish a want of good faith. It is not pretended that appellant knew that his agent was acting in the interest of his father-in-law.

Loyalty to his trust is the first and absolutely indispensable duty that the agent owes to his principal, and he must not put himself into such relations that his own interests or the interests of those whom he also represents become antagonistic to those of his principal. This rule of law not only rests on an understanding of human nature but on the utterance of the Divine Nazarene, when he said:

"No man can serve two masters; for either he will hate the one and love the other; or else he will hold to the one, and despise the other."

Of course, if the parties to a contract, knowing of the divided allegiance, can waive the law that protects them, that is their right; but he who waives must know the facts before he can be held to a waiver. In this case there was evidence to the effect that the double agency was known, but not the relationship, which would doubtless turn the scales against the principal who happens to be outside the pale of the family of the other interested party and the agent. As said by the Supreme Court of Tennessee, in Tisdale v. Tisdale, 2 Sneed (Tenn.) 596, 64 Am. Dec. 775:

"This doctrine has its foundation not so much in the commission of actual fraud, but in that profound knowledge of the human heart, which dictated that hallowed petition, 'Lead us not into temptation, but deliver us from evil.'"

[3] Injury to the principal is not the test, for it is immaterial that the principal has or has not been injured by the fraud and concealment. It is the duty of the agent to disclose all the information he has, as well as his relations with the other party. Mechem on Agency, § 1206.

[4] The evidence shows that Burleson did not know of the double agency and did not know that appellant was paying any commission, although appellant knew that each was to pay $300. In order that a double agency would be valid, and the agent be entitled to commissions from both principals, he must act with the full knowledge and consent of both principals. Armstrong v. O'Brien, 83 Tex. 635, 19 S. W. 268; Tinsley v. Penniman, 12 Tex. Civ. App. 591, 34 S. W. 365; Keitt v. Gresham, 174 S. W. 884; Baker v. Greer, 208 S. W. 755.

Not only did the lower court seek to compel appellant to pay the amount of $300 which he had contracted to pay, but sought also to force from him a payment for the father-in-law. This was doubtless done on the theory that the parties knew of the double agency and agreed to the double commission, and that appellant, having breached the contract, should be compelled to pay all the compensation to the agents. However, he did not know that he had as an agent a man who was acting for his wife's father, and who was endeavoring to obtain $500 more money from him in the interest of his relative. The fact of the relationship, an important matter, was not revealed to him, and the father-in-law testified that he knew nothing about the double commission. It is in the face of public policy to allow an agent to serve two principals whose interests are antagonistic, and in some states even the agreement of the two principals to a double agency and double compensation will not render the transaction valid. This we believe more in consonance with the general rule that it is contrary to public policy to sustain dual agency, but the matter has been settled differently by Texas courts, and we adhere to that ruling. However, when one of the principals agrees to the dual agency without a knowledge of relationship of the agent to the other principal, where the evidence indicates that the agent was working actively in the interest of his relative, and when the relative will not support him in the claim that the relative knew of the double commission, the law will not uphold a judgment in favor of the agent.

The judgment is reversed, and judgment here rendered that appellees take nothing by their suit and pay all costs of this and the trial court.