M. P. APPLEBY, Jr., Appellant,

v.

KEWANEE OIL COMPANY, Appellee.

No. 6251.

United States Court of Appeals
Tenth Circuit.
May 28, 1960.

G. C. Spillers, Jr., Tulsa, Okl. (G. C. Spillers and Jack R. Givens, Tulsa, Okl., on the brief), for appellant.

Robert D. Hudson, Tulsa, Okl. (W. Perry Dornaus, Tulsa, Okl., on the brief), for appellee.

Before MURRAH, Chief Judge, and BRATTON and LEWIS, Circuit Judges.

MURRAH, Chief Judge.

Appellant Appleby brought this diversity suit to collect $20,000 allegedly promised him for services rendered in providing information leading to the purchase of certain Texas oil and gas leases.

Appleby claimed that in February 1958, he offered to procure for Kewanee the leases, then owned by Bell Oil & Gas Company, for $675,000, and to furnish engineering data on the leases, all for the sum of $20,000 if Kewanee decided to purchase them; that Kewanee accepted the offer and Appleby furnished the data, after which Kewanee informed Appleby that they were not interested; and that Kewanee did purchase the same leases directly from Bell for $675,000 about a month later. Kewanee denied liability on the grounds that Appleby did not inform them that he was acting as agent for one Pringle in the transaction,[1] nor that he had any interest in the properties. The issues were submitted to a jury who returned a $20,000 verdict for Appleby, after which the trial court rendered judgment n. o. v. for Kewanee on the grounds that while acting as broker representing Kewanee, Appleby attempted to realize a secret profit from the transaction, and did not disclose to Kewanee that he was also agent for Pringle in the same transaction; in short, that he was an unfaithful agent of Kewanee and therefore could not recover his bounty.

As the case thus comes to us on appeal, we must assume that it was properly submitted to the jury on the issue of agency.[2] In any event, it is sufficient

---

**1.** It is an established fact that prior to dealing with Kewanee, Appleby had called Pringle's attention to the leases; that Pringle had arranged to buy them from Bell for $600,000, and that he and Pringle had agreed to split any profit they could make by reselling at a greater price. Appleby claimed that he informed Kewanee that ownership of the leases would go from Bell to Pringle and from Pringle to Kewanee, but said nothing of the profit he and Pringle expected to make on the exchange.

**2.** According to appellee's brief, the court instructed the jury that: "If you find by a fair preponderance of the evidence that a responsible officer or agent of the defendant company agreed with the plaintiff to pay plaintiff $20,000.00 if plaintiff could and would deliver title to the lease properties in question for the sum of $675,000.00; and that defendant after making such agreement and after plaintiff had lived up or could have lived up to the promises he made, but for defendant's conduct, went on to purchase such properties from Bell directly and refused to pay plaintiff the commission, then such would constitute a breach of contract by the defendant and plaintiff would be entitled to a verdict for $20,-000.00."

for our purposes that the judgment n. o. v. rests squarely upon the hypothesis that Appleby was, as a matter of law, the unfaithful agent of Kewanee. And it is axiomatic that as an unfaithful agent, he could not recover on his agency contract. See Miller v. Dittmeier, Okl., 290 P.2d 765; Restatement, Agency 2d § 469. And since Appleby undeniably stood to reap a secret profit from the transaction, it is equally clear that if he was Kewanee's agent, he was an unfaithful one. The only question then was whether Appleby was Kewanee's agent in the transaction, and this is for the jury unless reasonable minds could reach but one conclusion from the evidence. See Mitton v. Granite State Fire Ins. Co., 10 Cir., 196 F.2d 988; Wells v. Mayer, 185 Okl. 355, 91 P.2d 784; 2 Am.Jur., Agency § 454. Since the trial court concluded as a matter of law in the face of a contrary verdict that Appleby was Kewanee's agent, our function on appeal is to sift the evidence and the inferences to be drawn therefrom to determine if there is any reasonable basis for concluding otherwise. See Lopez v. Denver & Rio Grande Western R. Co., 10 Cir., 1960, 277 F.2d 830; Kippen v. Jewkes, 10 Cir., 258 F.2d 869.

■ The agency relationship exists if the conduct of the parties manifests that " * * * one of them is willing for the other to act for him subject to his control, and that the other consents so to act." Farmers Nat. Grain Corp. v. Young, 187 Okl. 298, 102 P.2d 180, 181, Syl. 1; and see also Restatement, Agency 2d § 1. Appellee's argument that one may be a broker without being under the principal's control misconceives the meaning of "control" by limiting it to its physical, master-servant sense, which to be sure is inapplicable to brokers. We know, however, that a broker is but a species of agent who may also be an independent contractor. See Restatement, Agency 2d § 1, Comment e; 8 Am. Jur., Brokers §§ 2, 4, 14, 85. And, a cornerstone of the agency relationship

is the right of the principal "to give lawful directions which the agent is under a duty to obey if he continues to act as such." Restatement, Agency 2d § 14, Comment b. A few selections from the evidence will suffice, we think, to demonstrate a reasonable factual basis for saying that Kewanee lacked this requisite right of control.

■ Nothing was ever put into writing between Appleby and Kewanee. According to the testimony of a Kewanee agent, Appleby offered to "deliver the properties" on a "take it or leave it basis." And, there was evidence that Kewanee knew that title would come to them from Pringle. Kewanee was anxious for Appleby to show some sort of written authority to procure the leases, e. g., that he had purchased an option for them, and Appleby never produced any such authority, though at one point he falsely told them that he had an option. After negotiations between Appleby and Kewanee had proceeded for about a month, Kewanee contacted Bell to determine if Appleby had authority to offer the leases for sale, and were informed that he did not. Within a few days thereafter, Kewanee told Appleby that they were no longer interested in the leases, but that if they did later purchase them, they would pay Appleby his $20,-000.[3] Kewanee did in fact purchase the leases from Bell soon thereafter.

To be sure, most of these evidential facts are controverted, but if believed, they constitute a reasonable basis for concluding that Appleby was not representing Kewanee's interests in the transaction, i. e., was not acting under the guidance, direction, or right of control by Kewanee. Rather it may be concluded that he was acting freely and independently in his own interest, without duty to Kewanee, and that he was guided by Kewanee's interests only to the extent that he hoped to present them a deal which they would take rather than leave.

---

3. Such promises to pay for services previously rendered may be of binding effect.

See Kaiser v. Fadem, Okl., 280 P.2d 728.

See also Jameson v. Goodwin, 66 Okl. 146, 170 P. 241; King v. Coombs, 36 Okl. 396, 122 P. 181; Restatement, Agency 2d § 14K. And thus the cases of Brockman v. Delta Mfg. Co., 184 Okl. 357, 87 P.2d 968; Levy v. Gross, 46 Okl. 626, 149 P. 237; and Plotner v. Chillson & Chillson, 21 Okl. 224, 95 P. 775, are inapplicable, because in each of those cases it was uncontested on appeal that the middleman was in fact a broker or agent.

The judgment is accordingly reversed and remanded with directions to reinstate the verdict.