# WADSWORTH *v.* ADAMS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ALABAMA.

No. 152. Argued and submitted January 20, 21, 1891.—Decided February 2, 1891.

A, the owner of five promissory notes for $100,000 each, being in want of money, empowered B, who knew of his necessities, to sell them at a discount which would net the sum of $380,000, agreeing to give him $10,000 in case of success. B took the notes to New York, and there offered them to C for $380,000. C declined to take them at that price, but offered $350,000 for them. B at first refused to communicate this offer to A; but, on being pressed to do so, said to C that as A was in need of money he would send the offer by telegraph, and he did so send it. At a later hour on the same day B asked C what he would do in case his offer should be refused, to which C replied that he would take the notes at $380,000. B did not communicate this to A. On the following day A received a telegram purporting to come from B: "Please answer my telegram of yesterday." As he received this telegram he was in conversation with D, who thereupon offered to take the notes and pay $380,000 for them. This offer was immediately accepted by A. A then wired to B, " Cannot accept offer." B replied: " Have made the negotiations on the terms you gave me." This transaction with C not being carried out, B sued A to recover the agreed compensation of $10,000, and recovered judgment therefor in the court below. *Held*, that B was not entitled to compensation under the contract on which he sued, and that the court, having been requested by the defendant to so instruct the jury, should have complied with the request.

It is a condition precedent to the right of an agent to the compensation agreed to be paid to him that he shall faithfully perform the services he undertook to render; and if he abuses the confidence reposed in him, and withholds from his principal facts which ought, in good faith, to be communicated to the latter he will lose his right to any compensation under the agreement; being no more entitled to it than a broker would be entitled to commissions who, having undertaken to sell a particular property for the best price that could be fairly obtained for it, becomes, without the knowledge of the principal, the agent for another, to get it for him at the lowest possible price.

THE case, as stated by the court, was as follows:

By the judgment below the defendant in error recovered the sum of twelve thousand eight hundred dollars as damages for

the alleged breach of an agreement made, in March, 1883, at Birmingham, Alabama, between him and H. F. De Bardeleben, representing Frank L. Wadsworth, trustee, whereby the plaintiff was to receive ten thousand dollars if he negotiated the sale, at a discount of eight per cent per annum, of five promissory notes, of one hundred thousand dollars each, payable in one, two, three, four, and five years, executed to said trustee by the Pratt Coal and Coke Company, and secured by mortgage upon its property. The proceeds of the notes at that discount would have been three hundred and eighty thousand dollars.

The undisputed facts in the case are as follows: Adams went to the city of New York for the purpose of finding a purchaser of the notes. He there offered them to J. J. McComb at a discount of 8 per cent per annum. According to the plaintiff's testimony, McComb did not say whether he would take them or not, but put his clerk to making calculations in relation to them, and left his office to see if he could make arrangements to get the money in the event he bought the notes. On his return, McComb said he would give $350,000 for them, and requested plaintiff to telegraph that offer to De Bardeleben. Plaintiff told him that it was useless to send such a telegram, as De Bardeleben would not accept the offer. McComb insisting on his offer being sent, Adams telegraphed De Bardeleben from New York, under date of March 27, 1883: "I can sell the five notes with mortgage for three hundred and fifty thousand dollars cash, the right of trustee to sell and transfer being all right. Answer." It does not appear at what hour of the day this telegram was sent, but the plaintiff testified that just before he left McComb, at four o'clock in the afternoon of the 27th of March, 1883, he asked him what he should do if De Bardeleben refused the offer of $350,000. McComb replied that "if De Bardeleben refused the offer of $350,000, then he would take the notes at De Bardeleben's proposition—that is, at eight per cent per annum discount." Adams then went from New York to Philadelphia; and he testified that, after leaving McComb on the afternoon of the 27th of March, he did not see or have any communication with him in relation to the notes or their sale or purchase.

Under date of March 28, 1883, De Bardeleben telegraphed to Adams at Philadelphia, where the latter resided: "Cannot accept offer." Adams, immediately, on the same day, replied by telegram from Philadelphia; "Have made the negotiation on the terms you gave me. Bring on your papers with Smith's opinion on the matters I mentioned to you. Let me know here when I shall meet you in New York." On the same day there was sent from New York, in the name of Adams, this telegram to De Bardeleben: "Please answer my telegram of yesterday." In reference to the latter telegram, which was received by De Bardeleben on the day of its date, the plaintiff was asked on cross-examination whether he did not send it. The bill of exceptions states: "After some hesitation he said possibly he might have done so, but had no recollection of going back to New York on the 28th. He was then asked by defendant if he had not given McComb authority to send said dispatch in his name: to which he said, possibly I may have done so, but I have no recollection of it. Upon further cross-examination, he said he had not sent said dispatch, nor had he any recollection that he authorized McComb to send it in his name." He further testified, on cross-examination, that he told McComb that De Bardeleben, for whose wife and children Wadsworth was trustee, "wanted money very badly, and that he wanted it as soon as possible; that he told McComb this while talking to him about the sale of said notes." Why Adams felt obliged to inform McComb of his principal's urgent need for money does not appear from the evidence.

De Bardeleben replied, on the 29th of March, to Adams's Philadelphia telegram of the 28th in these words: "You are too late. Have disposed of the notes." Adams telegraphed to De Bardeleben, under date of the 30th: "You are too late. You gave me explicit authority to sell at certain price, you to pay my commission. I wired you an offer I had below price you had named. You answered you could not accept offer, but said nothing about withdrawal of my authority to sell. I then sold to J. J. McComb, of Dobbs' Ferry, New York, on terms authorized by you, and you should confirm that sale forthwith. Answer." Under date of March 31, De Bardele-

ben telegraphed to Adams: "Your effort to beat me down in price has lost you the notes; will write." To this Adams, replied by telegram, under date of April 2: "Assumptions of your dispatch wholly unfounded; no effort to beat you down; reported you the offer had. Your refusing the first offer led me to dispose of the notes at your offer, which I did, and so reported to you." The plaintiff received from De Bardeleben, two or three days after it was written, the following letter, under date of March 31: "I telegraphed you this A.M.: 'Your effort to beat me down in price has lost you the notes; will write,' which I now confirm. When you left me on the hotel piazza you said that if Gov. Smith pronounced the papers all right you would take one-half and McComb the balance, you to telegraph me so soon as you got home. When I received your telegram offering me three hundred and fifty thousand dollars, I saw you were trying to make me take as little as you could, which was not in accordance with our understanding, so I at once took steps to sell to another party, which I have done. I am very sorry it has turned out so, as I expected to have you in my big coal company that I am now forming, you to do the financiering and I to get the property in shape, by which each would have made a quarter of a million dollars. I very much regret that it looks as though we will not be interested together."

It should be stated in this connection that when De Bardeleben received the telegram offering $350,000, and the telegram of March 28 from New York, requesting an answer to the New York telegram of the 27th, he was in conversation with Colonel Ensley, who offered $380,000 for the notes. The offer was immediately accepted. So that the notes were sold by De Bardeleben before he received the telegram from Adams that he had sold them on the terms originally named to him.

Touching the first interview between Adams and McComb on the 27th in New York, the latter, a witness for the former, said: "That he was acquainted with the parties to this suit; that he had known the plaintiff, Theodore Adams, for thirty-five years; that he made a contract with Adams in New York city on the 27th day of March, 1883, for the purchase, through

him, of five notes made by the Pratt Coal and Coke Company, payable to Frank L. Wadsworth, as trustee, in the sum of one hundred thousand dollars each; that by the terms of his said contract with Adams he (witness) was to take said notes at eight per cent per annum discount; that the proposition by Adams to sell witness said notes was made in his (witness's) office, No. 35 Broadway, New York city, on the 27th of March, 1883; that he did not accept the proposition immediately, but set his book-keeper to work on a careful calculation as to what the result would be to him (witness) on the said notes, if he purchased them on the terms offered, and on the supposition that he (witness) should borrow the money at six per cent to carry the transaction; that while this calculation was being made he discussed the matter with Adams, and suggested that he (Adams) should telegraph an offer of a lump sum of three hundred and fifty thousand dollars for the five notes of one hundred thousand dollars each, which Adams, after some hesitation, did; that afterwards, and before parting, witness told Adams that if this offer was declined he would take the notes on the terms offered, namely, eight per cent per annum discount, and that in either case he (witness) was the purchaser of the notes; that Adams told him he was authorized to make the sale; that all this transpired in his office, No. 35 Broadway, New York city, at one interview."

The court charged the jury, among other things, that "the plaintiff was a special agent, clothed with special power to sell the five notes at a price specified by De Bardeleben, and that if when the plaintiff, on March 27, 1883, first offered to sell said notes at said specified price to J. J. McComb, the said McComb did not express any acceptance of the offer, but told plaintiff to telegraph to said De Bardeleben a lump offer of three hundred and fifty thousand dollars, and also told plaintiff that if De Bardeleben declined that offer he (McComb) would take the notes at the price originally specified by De Bardeleben, amounting to three hundred and eighty thousand dollars; if afterwards, and in the same interview on said March 27, 1883, said McComb, in relation to said five notes, told plaintiff that if the said offer of three hundred and fifty

thousand dollars was declined, he (McComb) would take the notes on the terms first offered, viz., eight per cent discount, and that in either case he (McComb) was the purchaser of the notes, all this amounted to a conditional offer only to take the notes at the specified price first offered, and did not impose upon the plaintiff the duty or obligation to communicate to his principal the fact that McComb was ready and willing to buy the notes at the said price at which they were first offered, amounting to three hundred and eighty thousand dollars; and the failure of plaintiff to communicate that fact in any manner to his principal was not a breach of his duty nor bad faith in itself, as he was only a special agent to sell at a fixed, specified price, and not an agent to get the best price he could obtain." To this charge, and to each proposition contained in it, the defendant duly excepted. Among the requests by defendant for instructions was one to the effect that if the jury believed all the evidence, their verdict should be in his favor. The court refused to so instruct the jury, and to its ruling in that respect the defendant excepted.

*Mr. John T. Morgan* for plaintiff in error, submitted on his brief.

*Mr. A. H. Wintersteen* (*Mr. David D. Smith* and *Mr. Wayne McVeagh* were on the brief) for defendant in error.

The court below correctly charged that Adams was a special agent, as distinguished from a general agent. The agency was to sell the notes at eight per cent discount per annum. It was undisputed that De Bardeleben employed Adams to sell the notes, and it is very clear this act of employment was within the scope of his own agency, for it was a necessary means of rendering his agency effective. *Williams* v. *Getty*, 31 Penn. St. 461; *S. C.* 72 Am. Dec. 757.

The plaintiff in error is therefore wide of the mark in endeavoring at length to establish from the evidence that there was nothing to show that Adams was Wadsworth's special agent. All that is necessarily in the case in this connection is that Adams was a subagent lawfully employed by De Bar-

deleben. Wadsworth was then liable to carry out with Adams what De Bardeleben stipulated.

So, also, the jury were correctly instructed that, if the facts in evidence were believed there was no fraud or breach of duty on the part of Adams in failing to report the willingness of McComb to buy at the authorized price, if the lower price of $350,000 was declined.

The whole argument of the plaintiff in error in assailing this feature of the charge is postulated upon the theory that Adams was a general agent, with authority to get the best price possible, and that any communication to the vendor of a lower price than the best was a fraud.

So far is this theory without basis, that Adams was in fact, the price having been fixed by the vendor, practically merely a middleman to bring the parties together at that price, a commission accruing to him in the event of sale. The general rule is that an agent whose duty it is to bring the parties together may act for both parties without their knowledge or consent. *Rupp* v. *Sampson*, 16 Gray, 398; *S. C.* 77 Am. Dec. 416; *Collins* v. *Fowler*, 8 Mo. App. 588; *Orton* v. *Scofield*, 61 Wisconsin, 382. Adams's acquiescence in McComb's request to communicate his offer of $350,000 was therefore quite compatible with his duty to De Bardeleben.

But, supposing, for argument's sake, there had been a breach of duty on the part of Adams. He would not thereby forfeit his commissions, but would merely have been liable to pay such damages as resulted from his breach; and inasmuch as no damages resulted, he would be entitled to the full commissions agreed to be paid. In the following cases agents had authority to sell for a fixed price. They sold for sums in excess of the fixed price and retained the difference, together with the agent's commissions. It was held that the principal was bound to the agent only for the commission, and that the latter was entitled to the commission. *Kilbourn* v. *Sunderland*, 130 U. S. 505; *Blanchard* v. *Jones*, 101 Indiana, 542; *Kerfoot* v. *Hyman*, 52 Illinois, 512; *Merryman* v. *David*, 31 Illinois, 404.

When the agent defrauds his principal, the principal can-

recover only the damages sustained. *McMillan* v. *Arthur*, 98 N. Y. 167.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

We cannot give our assent to the proposition that Adams, being a special agent only, was not guilty of a breach of duty in withholding from his principal information of the fact that McComb was willing to take the notes at a discount of eight per cent per annum, that is, for $380,000, provided he could not get them for $350,000. That fact came to his knowledge before he and McComb separated on the 27th of March, and good faith, upon his part, required that he should at once, with the utmost dispatch, have communicated it to his principal, and not have permitted him — pressed for money, as Adams knew him to be and as he took care to inform McComb he was — to consider the offer of $350,000 in the belief that that was the highest price his agent could obtain for the notes. The agreement to pay the latter ten thousand dollars, if he negotiated a sale of them at a discount of eight per cent per annum, was in consideration of his endeavoring to dispose of them upon those terms. It was a condition precedent to his right to such compensation that the services he undertook to render should be faithfully performed. If his principal had accepted the offer of $350,000, he would have lost $30,000 by reason of the concealment or the withholding by his agent of the fact that the party making the offer intended to accede to the principal's terms, if he could not do better. In effect, Adams abandoned the position of agent for De Bardeleben to negotiate the notes for a specified sum, and, practically, coöperated with McComb in the latter's effort to get them at a sum less than De Bardeleben had authorized the agent to accept. He conducted himself as if he were more interested in McComb than in his principal. We have seen that when he learned, on the 28th, by telegram from his principal, that McComb's offer of $350,000 was rejected, he immediately, on the same day, telegraphed, from Philadelphia, to De Bardele-

ben that he *had* negotiated the notes on the terms originally given him — that is, for $380,000. As he testifies that he did not, after parting from McComb in New York, in the afternoon of the 27th, see or have any communication with the latter in relation to the notes or their sale or purchase, it could not be true that he had, himself, on the 28th, or before being notified of the sale by De Bardeleben, negotiated a sale for $380,000, unless, as stated by McComb, it was understood between him and Adams, before they separated on the 27th, that McComb was to take the notes at $380,000 if his offer of $350,000 was not accepted by De Bardeleben. So that, for every substantial purpose, involving the interests of the principal, the agent did precisely what he would have done if he had expressly, and for compensation, stipulated with McComb that, pending the latter's efforts, through the agent, to induce the principal to part with the notes for $350,000, he would conceal from his principal the fact that, by remaining firm, he could get $380,000 from McComb.

We cannot agree that such conduct upon the part of Adams was consistent with the duty he owed to his principal in virtue of his agency for the sale of the notes. He abused the confidence reposed in him, and thereby lost the right to claim the stipulated compensation of ten thousand dollars or any other sum. *Sea* v. *Carpenter*, 16 Ohio, 412, 418; Story on Agency, § 331. He cannot complain of the sale to Ensley, for the reason, if there were no other, that his telegram of the 27th gave no intimation of his purpose to make further effort to negotiate the notes upon the terms originally given him. On the contrary, in view of all the circumstances, De Bardeleben might not unreasonably have supposed, from that telegram, that the offer of $350,000 was the highest that Adams could obtain, and that nothing better was to be expected from his efforts. Be that as it may, we are of opinion that Adams was not entitled to any compensation under the contract upon which he sues, and that the court should have so instructed the jury in accordance with the defendant's request. He is no more entitled to compensation than a broker will be entitled to commissions who, having undertaken to sell particular prop-

erty for the best price that could be fairly obtained for it, becomes, without the knowledge of his principal, the agent of another to get it for him at the lowest possible price. The assumption of the latter position would be a fraud upon the vendor who is entitled, in such cases, to the benefit of the diligence, zeal and disinterested exertions of the agent in the execution of his employment. The law requires the strictest good faith upon the part of one occupying a relation of confidence to another. *Kilbourn* v. *Sunderland*, 130 U. S. 505, 519; Story on Agency, §§ 31, 211; *Farnsworth* v. *Hemmer*, 1 Allen, 494; *Rice* v. *Wood*, 113 Mass. 133; *Scribner* v. *Collar*, 40 Michigan, 375, 378; *Raisin* v. *Clark*, 41 Maryland, 158; *Lynch* v. *Fallon*, 11 R. I. 311.

*The judgment is reversed, and the cause remanded for further proceedings in conformity with this opinion.*