<hr />

SOUTHACK et al. v. LANE.

(Supreme Court, Appellate Term. July 2, 1900.)

1. BROKERS—ACTING FOR BOTH PARTIES—RIGHT TO COMMISSIONS.
   Where defendant engaged real-estate brokers as his agents to sell his property, and without his knowledge they were at the same time in the employ of the purchaser to secure the property at the lowest possible price, they forfeited their right to a commission for making the sale.

2. PLEADING AND PROOF—VARIANCE.
   A complaint which alleged that complainants were real-estate brokers, and that defendant, well knowing that fact, gave them an option on his property, and agreed to pay a commission for their services in case of a sale, and that they procured a purchaser, and in pursuance of negotiations initiated by them a sale was effected, stated a cause of action on the theory that the plaintiffs were brokers, and hence they could not recover on proof that they were middlemen.

Appeal from city court of New York, general term.

Action by Frederick Southack and others against J. Henry Lane. From a judgment in favor of the plaintiffs affirmed by general term, (52 N. Y. Supp. 687), defendant appeals. Reversed.

The complaint sets forth that the plaintiffs are real-estate brokers; that the defendant desired to sell certain real estate, and gave plaintiffs an option or refusal for the purchase of said premises at the price of $180,000, and further agreed to pay the plaintiffs a commission for their services if they should effect a sale thereof; that plaintiffs did procure one Rose as a purchaser, and introduced him to the defendant, and that thereafter, and in pursuance of such negotiations, a contract for the sale of the premises to said Rose was made by the defendant at the price of $176,000; that the defendant expressly promised and agreed to pay to the plaintiffs, for their services in negotiating the sale of the premises, the sum of $875, and the further sum of $1,000, provided it could be arranged that he would not have to pay the sum of $1,000 to one Hall to surrender a lease of a portion of the premises; that plaintiffs did procure such surrender as stipulated, and that a deed of the premises was made and delivered to the said purchaser; that the defendant, by reason of these facts, became indebted to the plaintiffs in the sum of $1,875, and there-

after paid $1.000 of such sum, but refuses to pay the balance of $875. The answer admits the option, and admits the agreement to pay a commission, provided they procured a purchaser at $180,000, but not at a less price, although it is subsequently admitted that the agreement was made. It admits that Rose was introduced by plaintiffs to defendant, and also admits the sale to Rose for $176,000. The answer, however, denies that such introduction, negotiation, contract of sale, or subsequent conveyance to Rose constituted performance by plaintiffs of the duties undertaken by them as defendant's exclusive agents, or entitled them to a commission or to payment for services; and the answer alleges that the plaintiffs were faithless to the defendant in suppressing certain important facts within their knowledge, and in acting as agents for Rose, and in his interests, without the knowledge of the defendant. The answer admits that defendant expressly agreed to pay to plaintiffs, for their services in negotiating the sale of the premises, the sum of $875, but alleges that, by reason of the false representations of the plaintiffs that they could obtain no higher price for said property than $176,000, defendant was induced to sell the premises for less than might have been obtained for the same. In view of the testimony and the ultimate contentions of the parties, it is unnecessary to state the further allegations of the pleadings.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Hornblower, Byrne, Taylor & Miller (Howard A. Taylor and Albert S. Bard, of counsel), for appellant.

Cardozo & Nathan, for respondents.

PER CURIAM. The only question that requires discussion is the one raised by the denial of the motion to dismiss the complaint at the close of the testimony. The few exceptions taken upon the admission or exclusion of evidence are not of sufficient weight to demand consideration.

Three grounds are assigned for the dismissal of the complaint, as follows, viz.: (1) Under the complaint itself, the plaintiffs have sued as brokers for a commission arising through negotiations undertaken by them, and have in no way sued as middlemen or introducers, and, under this allegation of the complaint, it would be improper for them to sustain their claim to this commission on the ground that they were merely introducers. (2) From the uncontradicted evidence it appears that they were ordinary real-estate brokers, who had undertaken to negotiate a sale of this property for the defendant; that in the course of these negotiations they became aware of pertinent facts bearing upon the value of that property at that particular time, and that they failed entirely to disclose those facts. (3) At the time when the contract was signed, and prior thereto, during the course of these negotiations, while holding themselves out as the agents of the defendant, the plaintiffs were in fact all the time acting as the agents on the other side, and were endeavoring to secure the best price for the purchase at the same time that they pretended to be the agents of the defendant.

With regard to the alleged suppression of pertinent facts by the plaintiffs, it appears that these pertinent facts consisted of an intention of Rose and of his associates to purchase defendant's property as part of a large plot of grounds, on which Rose and his associates proposed to erect an immense establishment, and of the fact that Rose or his associates had already contracted to buy five lots neighboring

to the three sought to be purchased of the defendant. These "pertinent facts," however, appear to have been known to the defendant; for during the negotiations which he appears to have personally carried on with Rose, after the latter had been presented to him by the plaintiffs, he said to Rose: "You must have this property. You are buying other property in the neighborhood. You bought one next door." Defendant demanded $180,000 for the property, but Rose told him that he would give only $175,000. Personally the defendant negotiated with Rose, and it was finally agreed between them that Rose should give $176,000. Again, defendant said to Rose: "You will need this property, because you are getting other property in the neighborhood. I understand a stable in our rear has been sold, and I have heard it rumored that the American Lithographic Press wanted a large piece of property in this neighborhood. Is that your customer?" But Rose refused to tell him whom he was acting for. Rose, moreover, denies that he told his purpose for buying that property to the plaintiffs. One of the plaintiffs says that he had done his best to get $180,000 for the property, and told defendant so, and then concluded to bring the parties together, and let them make their own bargain.

The learned trial justice gave the jury a substantially correct instruction with regard to middlemen and agents, as follows, viz.:

"The middleman is employed to bring two or more parties together, the parties when they meet to do their own negotiating and make their own bargains. He sustains no confidential relations with either party, and his fees are always fixed by contract or stipulation, as the law does not regulate them; and, in that respect, he differs from an agent, for there the law fixes the compensation, if he acts as an agent, and he is entitled to recover as such for the services performed. * * * The law is that an agent, sustaining the confidential relations of principal and agent, and having property for sale, must act in absolute good faith, and, in employing such agent, his principal also retains in his interest such agent's knowledge, skill, honesty, and best efforts; and if by any act, or the suppression of any information that affects such interest, the principal is injured, then the agent is not entitled to compensation."

See Knauss v. Brewing Co., 142 N. Y. 70, 36 N. E. 867; Haviland v. Price, 6 Misc. Rep. 372, 26 N. Y. Supp. 757; Pollatschek v. Goodwin, 17 Misc. Rep. 587, 40 N. Y. Supp. 682; Siegel v. Gould, 7 Lans. 177; Story, Ag. (9th Ed.) § 38; Chatfield v. Simonson, 92 N. Y. 209; Wadsworth v. Adams, 138 U. S. 380, 11 Sup. Ct. 303, 34 L. Ed. 984; Abel v. Drisbrow, 15 App. Div. 536, 44 N. Y. Supp. 573; Murray v. Beard, 102 N. Y. 505, 7 N. E. 553.

The learned trial justice submitted the issues to the jury as follows, viz.:

"If you find that the plaintiffs were the defendant's agents, and that, while so acting for him in the sale of this property, they suppressed information that would have benefited him, or that they did any other act to his injury, or in violation of this relation of principal and agent, then I charge you that they are not entitled to recover in this case, as they can only recover if they have rendered honest, fair, and impartial services. If, however, you find that they were simply employed as middlemen to bring the parties together,—there being no dispute as to the agreement to pay the $875,—then the plaintiffs are entitled to recover the $875. If, on the other hand, you find that they were agents, but did all they ought to do, under the rules as I have laid them down for your guidance, and that they did not act in bad faith, or suppress any information that should have been disclosed by them, you may find a verdict in their favor for $875."

By their verdict the jury have found one of two things, viz. either that the plaintiffs were middlemen, or that they were agents who had faithfully performed their duties as such. The defendant claims that, under the allegations of the complaint itself,. they were not middlemen, but agents, and that, by reason of their own admission in the testimony, they had not faithfully performed their duties as such agents.

The defendant's counsel requested the court to further charge the jury that the plaintiffs "admit that up to the moment when Lane entered the office of Rose and Putzel they had been acting as his agent, and they claim that thereafter they were acting as middlemen; and now we claim that the jury must find that Lane was distinctly informed of and consented to this change of relationship, and no longer relied in any way upon the assistance or advice of the plaintiffs"; which request the court charged. It is clear, therefore, that the jury must have understood what requirements the plaintiffs had to establish before they could find that plaintiffs were merely middlemen. It seems to us from the uncontradicted testimony that plaintiffs cannot recover as agents, for they were clearly in the employment of Rose for the purchase of this property at the same time they were negotiating a sale for the defendant, and this without the knowledge of defendant. A real-estate broker, by attempting to act for both sides, without the knowledge of the parties, loses his claim for commissions, and can enforce payment from neither party. Baer v. Koch, 2 Misc. Rep. 334, 21 N. Y. Supp. 974. If, however, they were middlemen only, they were entitled to the verdict; for the rule that a broker employed to buy or sell real estate loses his right to compensation if he agrees to act in a similar capacity for the other party does not apply to one employed simply to bring the parties together. There is no violation of duty in such a case on the part of the broker in agreeing for commissions from each party, or in failing to notify the one of his employment by the other. Knauss v. Brewing Co., 142 N. Y. 70, 36 N. E. 867.

No exception was taken to the charge, except as to the instruction that the compensation of an agent is fixed by law, and that of a middleman by contract. This instruction was thereupon modified as follows: "The rule is that the agent is entitled to 1 per cent., in the absence of any other agreement."

We have not failed to notice that the plaintiff Ball swears that his firm was never paid anything by Rose and Putzel, or any one on their behalf, for this negotiation and transaction. Nevertheless he admits his relations with Rose, for he says:

"He [Rose] told me at the outset, on the subject of the price, that I must see the best I could do, and submit it to him; that I should get a uniform price on the property, and submit it. Q. And when he said he wanted you to do the best you could about the price, he being the proposed purchaser, you knew he meant to get the prices as low as possible to submit to him? A. I take it that he meant to bring the properties together, and the prices too. Q. When Rose and Putzel told you that you were to do the best you could about the price, and they were proposing to buy this property, did not you understand that your object was to secure as low a price as possible to be named to them? A. Yes. Q. And this was prior to the option with Lane and the signing of the contract? A. Yes. Q. Did you thereupon undertake to fulfill the commission of Rose? A. Yes."

We think that plaintiffs are shown by the undisputed testimony to be acting for both parties, unknown to the defendant, and could not recover as brokers.

We will now examine the pleadings and proof as to their acting as middlemen. The complaint alleges (1) that the plaintiffs were real-estate brokers; (2) that defendant, well knowing this fact, gave plaintiffs an option or refusal for the purchase of said premises at the price of $180,000, "and further agreed to pay the plaintiffs a commission for their services if they should effect a sale thereof"; (3) that plaintiffs did procure Rose as purchaser, and introduced him to defendant, and in pursuance of the negotiations so initiated by plaintiffs a contract for the sale of said premises to Rose was made at the price of $176,000; (4) that "defendant expressly promised and agreed to pay to plaintiffs for their services in negotiating the sale of said premises as aforesaid the sum of $875." There is nothing in the complaint to indicate that plaintiffs regarded themselves as middlemen, but, on the other hand, they appear to base their cause of action on the theory that they were brokers employed by defendant to effect the sale of this property. The testimony, taken in the most favorable light to plaintiffs, is not convincing that plaintiffs were middlemen. The plaintiff Ball swears that, being unable to secure the $180,000, he sent his employé, Deane, to the defendant. "Q. And your sending him to see Lane was in your efforts to secure these lots for Rose? A. Yes." He goes on to say that he telephoned Deane to bring defendant to meet Rose, and then met defendant at Rose's office, and told him he could not get $180,000. He adds: "My understanding was that Lane refused to do better than his price of $180,000, and Rose would not do anything better than $170,000, and we wanted to bring the principals together, and let them settle the matter themselves." "Q. You submitted various propositions back and forth? A. Yes." He says that up to the time of the final interview between defendant and Rose plaintiffs considered it their duty to advise defendant. He also says that at that interview defendant wanted Rose to pay half the commissions or fees of plaintiffs, which Rose declined to do, and that defendant finally agreed to pay the fees and $1,000 to plaintiffs, provided the latter secured the surrender of the Hall lease. The $1,000 was paid. The defendant swears that he was in ignorance of the fact that plaintiffs were also working for Rose in bringing about the sale when this agreement was made. The plaintiff Ball does not deny that before the contract of sale was made he knew of the other purchases by Rose, but failed to communicate the information to defendant. He attempts to explain this by saying that he thought when defendant came to Rose's office, as above described, that plaintiffs' duties to defendant ceased, and that defendant could take care of himself; in other words, that having brought the parties together, before they had agreed upon a price, his duties as agent ceased, and he became a mere middleman. While confessing that he knew of Rose's various purchases of surrounding property, he "presumed" that a large establishment was to be erected thereon, but he made no disclosures in this respect to defendant.

Upon a careful review of the whole case, it seems to us that the testimony of the plaintiffs themselves preclude a recovery by them as brokers, while, under the pleadings, the plaintiffs cannot maintain the action as middlemen.

·The judgment must therefore be reversed, and a new trial ordered, with costs to appellant to abide the event.