## HIBLINE v. PRUDENTIAL OIL CORPORATION.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1923.)

No. 2083.

Principal and agent &mdash;84—Acceptance of commission from buyer held to defeat right to commission from seller.

An agent for the sale of a product, who was to receive half of the excess for which he sold the product over $8 a ton and under $14 a ton, and one-third of such excess over $14 a ton, so that seller was interested in having him secure as large a price as possible, lost his right to a commission, where, without the seller's knowledge, he received a commission also from the buyer, even if the agreement with the buyer contained nothing detrimental to the seller's interests.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action at law by J. Edward Hibline against the Prudential Oil Corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

Morris A. Soper and W. L. Clark, both of Baltimore, Md. (Richard E. Preece, of Baltimore, Md., on the brief), for plaintiff in error.

Robert E. Lee Marshall, of Baltimore, Md., for defendant in error.

Before WOODS and WADDILL, Circuit Judges, and McCLIN-TIC, District Judge.

WADDILL, Circuit Judge. This is an action of assumpsit brought by the plaintiff in error against the defendant in error, hereinafter referred to as plaintiff and defendant respectively, to recover for commissions claimed to be due plaintiff in connection with sales of petroleum coke made by him for the defendant.

Plaintiff was resident manager at Baltimore of the Quemahoning Coal Company, and in that capacity had been for some years engaged in selling coal for that company, as well as engaged in the sale of "anything else on the side that he desired." Defendant was engaged in the oil-refining business, in the process of which it produced

.a by-product known as "petroleum coke." Plaintiff became acquainted with the manager of the defendant, while selling coal for the latter's plant, and during the latter part of the year 1919 a shortage of ·coal developed in the country, with the result that plaintiff undertook to sell for defendant its petroleum coke for fuel purposes. , Prior to ·that time neither had ever handled that product for fuel purposes in a ·commercial way, nor was the same known or used in the fuel industry. Plaintiff undertook to find a market for the same, and after some efforts sold 1,000 tons to the Baltimore Brick Company for experimental purposes. Subsequently, on the 5th of December, 1919, a contract was entered into between plaintiff and defendant, whereby—

"On any sales netting you, Hibline, between $7 and $8 per ton, f. o. b. our refinery, you are to receive as commission any amount over and above $7 per ton. Should your sale price exceed $8 per net ton, f. o. b. refinery, the excess .above $8 is to be divided equally between yourself and our company. * * * We are to bill customers direct. All sales are therefore subject to our approval of your customers' credit."

It will be seen that no maximum price was named, only a minimum ·of $7 per ton being fixed, leaving plaintiff to procure the highest prices possible for the benefit of himself and the defendant. Shortly ·after making this contract, in the same month of December, 1919, ·plaintiff concluded a contract with Mackenzie, Stringer & Co. for the sale of 1,000 tons of the coke per month for the months of January, February, and March, 1920, at the price of $13 per net ton, and the purchasers indicated that they might take the same quantity per month for each month during the year 1920. Upon this being reported to the defendant, it assented to the January, February, and .March sales, on the terms and conditions set out in the December 5th contract, at the price of $13 per net ton, and defendant agreed to give plaintiff an option on 1,000 tons a month for the last nine months of the year 1920, the same being contingent, in the first place, upon the success of the plaintiff in disposing of the coke sold to Mackenzie, Stringer & Co. for the first three months of 1920, and the ·defendant thereupon proposed as to sales for the remaining nine ·months of 1920 on the basis of the plaintiff receiving the $1 profit between $7 and $8 per ton, and between $8 and up to $14 the same to be divided fifty-fifty, and if the sales exceeded $14 plaintiff was to receive one-third of the excess, and the defendant two-thirds. The ·contract between the plaintiff and defendant was thereupon closed at those figures, and the same apparently carried out in the perform.ance of the contract for the sales from April to December, which were at the price of $13 per ton, until and including shipments for the month of September, 1920, and plaintiff was paid his commis.sions according to the terms of the contract covering that period. For the month of October, the full 1,000 tons of coke were deliv·ered, and for the month of November only 209.25 tons, and for the ·month of December 282.75 tons, making a total of 1,492 tons deliv·ered for the last three months of 1920, and for which the defendant ·was paid at the rate of $13 per ton. Plaintiff was not paid his com-

mission of $3.50 per ton on any of the last three months' shipments, amounting to 1,492 tons, and claims the sum of $5,222 due him therefor.

The case was tried by the court below without a jury, by consent of parties by counsel, under written stipulation; and the court, after hearing the evidence on both sides and considering the same, ruled, as requested by the defendant, that under the pleadings in the cause there was no legally sufficient evidence to entitle plaintiff to recover, and accordingly entered judgment in favor of the defendant, dismissing the case, with costs. It is from the judgment of the District Court, denying the plaintiff's right of recovery, that this writ of error was sued out.

The assignments of error present for our consideration but the single question of whether, under the pleadings and proofs in the case, the lower court correctly passed upon the plaintiff's right of recovery. The facts as affecting the material issue to be determined, are not seriously disputed. There is no denial that the plaintiff made the sales for the defendant, and for the commission specified, nor that the plaintiff had not been paid for the October, November, and December sales, and that he was entitled to recover, if at all, in the sum specified of $5,222. Nor is there serious dispute as to the existence of the facts as contended for by the defendant, urged as the reason why plaintiff should not recover. Plaintiff admits making the contract with his customer, Mackenzie, Stringer & Co., to receive 25 cents a ton on sales made to them, commencing with the month of June, 1920, and that he was paid such commission for the full amount of sales made after June of that year. He likewise admits that the defendant was not informed of this private understanding as to the 25 cents per ton from his customers, nor did defendant know of the same—his claim in that regard being that what he did in respect to the 25 cents was not a matter of concern to the defendant. It is as to this last position of the plaintiff, and the legal effect of his dual relation to the transaction, in the light of the facts correctly ascertained, that this case must be determined. Learned counsel for the plaintiff in his brief says:

"It is, of course, conceded that if the commission of 25 cents a ton paid by the purchaser to Hibline or accepted by him for any improper or corrupt purpose, direct or indirect, the payment thereof would defeat the claim to commission owing him by the Prudential."

This statement of counsel goes pretty far, and is quite comprehensive as bearing upon the legal effect of the dual relation of the plaintiff respecting his rights in the subject-matter of this litigation. But it makes the same depend necessarily upon the improper or corrupt nature of the plaintiff's action, which is not correct. Of course, the existence of such motive accentuates the invalidity of the transaction. The law goes further, and avoids such transactions, where those in confidential relations with others enter upon a course prejudicial to and inconsistent with the general undertaking, without notifying or advising those interested of such dual relationship. To illustrate: In this case the plaintiff and defendant were to divide the

proceeds of sale over $8 per ton up to $14, and on any excess over the higher sum plaintiff was to receive one-third and the defendant two-thirds of the same. The defendant was thus vitally interested in any sum procured over $8. Plaintiff sold the coke for $13 per ton, and if he received only 25 cents a ton over the $13, the defendant was entitled to one-half of that, which was actually about $125 a month.

The matter of price was of vital interest to both parties. The agent was legally and morally bound to procure the highest sum obtainable, and also to exercise the utmost good faith, and to proceed with entire fidelity to his principal, concerning the object of his employment. Plaintiff, while thus acting as agent for the defendant, had no right to accept compensation from others in respect to such sales, without fully informing his principal, certainly where failing to do so would operate to the latter's prejudice. Such transactions are void, against public policy and good morals, and would tend greatly to encourage doubtful undertakings, instead of strengthening those based upon simple and upright principles. The basic weakness of such transactions is that they are predicated upon the right and ability of one person to serve two masters; to be agent at the same time for buyer and seller, both of whom are expecting the best service at the lowest charge. These are simply inconsistent and impossible positions, which should not be encouraged or tolerated. Only a few authorities need be cited in support of the conclusion reached. Wadsworth v. Adams, 138 U. S. 380, 11 Sup. Ct. 303, 34 L. Ed. 984; Munro v. Smith, 259 Fed. 1, 21, 170 C. C. A. 1; Raisin v. Clark, 41 Md. 158, 20 Am. Rep. 66; Parker v. McKenna, L. R. 10 Ch. 92; Harrington v. Victoria Graving Dock Co., L. R. 3 Q. B. Div., 549; Quinn v. Burton, 195 Mass. 277, 279, 81 N. E. 257; Little v. Phipps, 208 Mass. 331, 94 N. E. 260; Murray v. Beard, 102 N. Y. 505, 7 N. E. 553; Pagel v. Creasy, 6 Ohio App. 199; Clark & Skyles on Agency, par. 364; Story on Agency, § 211.

Counsel for the plaintiff insists upon the right of recovery in this case, because, as he claims, the acceptance of the 25 cents had no relation to the sale of the coke, but was in fact subsequent thereto, and paid wholly for another purpose unrelated to the purchase itself. Assuming these defenses to be open to the plaintiff, we are convinced that the District Court correctly decided the facts against the plaintiff in relation to the same, if, indeed, we are not bound by such finding. It seems entirely manifest to us that the arrangement as to paying plaintiff, the defendant's agent, 25 cents per ton, and the acceptance by him of the same, had direct relation to the sales in question, and operated distinctly prejudicially to the defendant, even if it was not part of a larger plan for the disposition of the defendant's coke, to which the plaintiff was a party, and which involved great loss to the defendant.

The judgment of the District Court is affirmed, with costs.

Affirmed.