### SANFORD v. REMINGTON–RAND, Inc., et al.
### No. 2898.

Court of Civil Appeals of Texas. El Paso.
Nov. 2, 1933.

Wilchar & Wilchar, of El Paso, for appellant.

Loomis & Kirkland and Del W. Harrington, all of El Paso, for appellees.

PELPHREY, Chief Justice.

Prior to July 12, 1932, J. B. Williams was manager of the typewriter division of the appellee company at El Paso, Tex.

On that date he executed to Mrs. Dorothy Sanford his note for $500 due on or before December 10, 1932, and bearing interest at the rate of 8 per cent. As security for the note he also executed a chattel mortgage upon fifteen typewriters, described by make and numbers, and supposed to be then in appellee's place of business.

In December, 1932, Williams left El Paso, and on January 9, 1933, appellant filed this suit seeking to recover from appellee the full amount of the note together with interest and attorney's fees thereon, or in the alternative for the value of certain of the typewriters alleged to have been converted to its own use and benefit. He also sought to foreclose his chattel mortgage lien upon five typewriters which he alleged to be in the possession of a Mrs. M. E. Roll.

In response to special issues a jury found that Williams, at the time the note and mortgage were executed, was an authorized agent of appellee; that he was acting within the apparent scope of his authority when he accepted the $500 and executed the note and mortgage; that Harold L. Sanford relied upon such apparent authority in dealing with Williams; that the reasonable market value of the typewriters alleged to have been in possession of appellee was $310; and that the five typewriters mentioned in the mortgage and alleged to have been in possession of Mrs. Roll were not given to her by Williams in payment of a prior existing debt.

After the verdict was returned, the trial court granted a motion of appellee for judgment non obstante veredicto and rendered judgment that, as against appellee, appellant take nothing.

Mr. Sanford's testimony as to the transaction was:

"Q. During the last year, do you know what J. B. Williams was doing? A. He was manager of the Typewriter Division of the Remington Rand, Inc., to the best of my knowledge.

"Q. Did he at any time come to you with a proposition with regard to money? A. Yes.

"Q. What was the proposition? A. The proposition was this, that at the end of a six months period, second hand typewriters accepted in trade on new sales were either sent to the factory in a group, or the equivalent that was allowed on these typewriters.

"Q. That's the equivalent in money? A. In cash, yes. He approached me to advance $500.00 to be sent to Remington Rand, Inc., in place of 15 typewriters on hand in their office. The 15 typewriters would then be in his possession.

"Q. How about the title? A. The title, however, belonged to Remington Rand, but they would belong to J. B. Williams then.

"Q. At the time you advanced this money, did you advance this money to J. B. Williams on his credit alone?

"Q. At the time you made this advance of $500.00, why did you do that? A. I did it as an investment. The note that was given me was an 8% note. I did it for that, and I did it more or less because Williams, as he put it, it would be a better showing for him if he sold the typewriters rather than have to turn them in.

"Q. Where was the money to go to? A. It was to go to the Home Office, or the Dallas Branch.

"Q. What did Williams tell you with regard to the money? A. He told me that the money would be advanced to Remington Rand in payment of these typewriters rather than send these typewriters to the factory.

"Q. At the time you gave Williams this money, he was to send this to the Company, you say? A. Yes.

"Q. And what was this money to be sent to the Company for? A. This represented the trade-in value of these machines, that it was time to be sent to the factory, they had been accepted as trade-ins on new sales.

"Q. Williams told you, didn't he, as you testified, that if he could get the money, $500.00, to send to this company, Remington Rand, Inc., that when they received the money these typewriters would belong to Williams, is that what he told you? A. Yes.

"Q. Is that what you understood? A. Yes."

Appellant's position is that the court should have rendered judgment in his favor against appellee for $310, the value of the typewriters found by the jury on the theory that appellee, through its agent, Williams, had converted them to its own use and benefit, and that there being evidence that Williams was acting within the apparent scope of his authority when he accepted the $500 from appellant and executed the note and mortgage, the court should have refused appellee's motion for judgment non obstante veredicto.

Appellee counters with the following proposition: "Appellant knew when he loaned J. B. Williams $500.00 and took a chattel mortgage on the typewriters involved in this suit that J. B. Williams was in possession of the typewriters belonging to his principal, the Remington Rand Co., Inc., with authority to sell them for his principal, and that J. B. Williams proposed to take typewriters of value greater than $500.00 out of stock and appropriate them to his own use and acquire title thereto by sending to his principal $500.00 so borrowed by him from appellant for that purpose, undertaking to act as agent for his principal in such sale to himself. So, appellant is charged with notice under the law that in such transaction J. B. Williams could not, and was not acting as agent for his principal, and could not bind his principal by any act or promise involved in such negotiation, nor in any manner prejudice his rights, title or interest in the property involved in favor of appellant by anything he did, promised or said in such negotiations."

With this counter proposition we are inclined to agree.

■ A selling agent must not sell to himself, 2 C. J. § 358, p. 700, and such a sale is voidable unless it be shown that the principal had full knowledge of the facts and consented to such sale.

■ A purchaser from the agent with knowledge of the facts stands in no better position than the agent himself. 2 C. J. § 364, pp. 706, 708. Therefore, in the present case, where appellant's title to the typewriters depended upon a sale by appellee to Williams, the burden was upon him, before he would be entitled to recover as against appellee, to show the consent of appellee to the sale.

The judgment of the trial court is affirmed.

HIGGINS, J., did not sit in this case.