## VILLIVA v. HARRISON.

### No. 3064.

Court of Civil Appeals of Texas. Beaumont.

March 16, 1937.

Rehearing Denied March 17, 1937.

Bowers & Ross, of Beaumont, for appellant.

Orgain, Carroll & Bell, John G. Tucker, and Howell & Howell, all of Beaumont, for appellee.

WALKER, Chief Justice.

This was an action by appellant, Sam Villiva, an insurance agent and real estate broker, against appellee, James A. Harrison, for specific performance of the following contract, or in the alternative for damages for its breach, to wit:

"The State of Texas
"County of Jefferson

"Know All Men by These Presents: That I, James A. Harrison, of Beaumont, Texas, for a valuable consideration to me in hand paid by Sam Villiva, of Beaumont, Texas, the receipt of which is hereby acknowledged; do hereby appoint said Sam Villiva as my exclusive agent to sell or procure a purchaser for a one-half of my one-eighth royalty in an undivided one-half interest in and to a ten acre tract of land conveyed to me on December 20th, 1927, by R. T. Pinchback and wife and recorded in Volume No. 334, Page No. 330 of the Deed Records of Jefferson County, Texas, and being also the tract of land re-

cently mortgaged by me to W. E. Orgain of Beaumont, Texas, to secure a loan of $100.00, and being more particularly described as follows:

"Being an undivided one-half interest in and to ten acres conveyed by George Tevis and wife to R. W. Tevis, beginning on the E. line of said Tevis 100 acre tract at a post oak marked 'X' two cuts above and two below with a cross and two hacks above and below; thence W. 175 varas to a Red Oak marked same way; thence S. far enough that the survey with the above line as a base in an oblong square form will make ten acres; thence E. 175 varas more or less, the same distance as the first line of this survey; thence north to the place of beginning, and located in the C. Williams League, Jefferson County, Texas.

"This agency and option, however, is conditioned on the following facts: It shall become null and void and of no force and effect unless said Sam Villiva, on or before Saturday noon, February 1st, A. D. 1936, will find a purchaser who is willing to pay and does pay to me the sum of $250.00 in cash for the royalty interest above stated in said tract of land. This price is reached on the basis of $100.00 per acre for the full one-eighth royalty interest, but since I agree to sell only one-half of my royalty interest, the price is one-half of $100.00, which is $50.00 per acre for the one-half of my one-eighth royalty.

"Witness my hand, at Beaumont, Texas, this the 24th day of January, A. D. 1936.

"[Signed] James A. Harrison

"Attest:

"[Signed]   Mrs. James A. Harrison."

In his petition appellant designated this contract an "agency and option"; he alleged that it was supported by a valuable "monied consideration" paid by him to appellant. He alleged further that (a) "immediately after the 24th day of January, 1936, he set about to find a purchaser for said royalty interest"; (b) "that as a result of plaintiff's efforts and after fully investigating the situation, plaintiff decided to purchase said royalty interest for himself and tendered to the said · James A. Harrison, defendant, the $250.00 mentioned and provided for in said contract, and tendered and offered to do all other things proper or necessary for the purchase of said royalty interest"; (c) on January 31, 1934, prior to the expiration of the "agency and option agreement," he tendered to appellee the full amount of money "specified in the contract," and demanded "conveyance from the defendant to the plaintiff, of such royalty interest * * * and in fact did on January 31, 1936, * * * actually tender in cash * * * the amount of $250.00 to the defendant as provided in said contract above set forth * * * but the defendant * * * refused to convey to the plaintiff said royalty interest and refused to accept said amount of $250.00"; (d) the royalty interest in controversy was worth only $250 on the date of the execution of the contract, but by reason of the discovery of oil it now has a market value of $10,000; (e) appellant renewed his tender of $250 and prayed for specific performance, and in the alternative for damages, and for general and special relief, both in law and in equity.

Appellee answered by general demurrer and general denial.

The trial was to the court without a jury, with judgment in favor of appellee, supported by conclusions of fact and law as follows: First, on the 24th day of January, 1936, appellee executed and delivered to appellant the contract set out above, on the consideration of $5 paid appellee by appellant through a check for that sum, dated January 24, 1936, payable to the order of appellee and indorsed by him; on the face of the check was written the word "option." Second, appellant "elected and determined to purchase the said interest from the defendant, Jas. A. Harrison, himself, for the sum of $250, and in turn sell said interest to the Cotton Belt Oil & Gas Company for the sum of $1,000 and did on January 31, 1936, go to the home of said Jas. A. Harrison and tender him the sum of $250 in cash and at the same time presented to him the following described instrument for the said Jas. A. Harrison to execute." The instrument tendered appellee recited a cash consideration of $10, and was to be executed by appellee, joined by his wife, and by its terms · was a conveyance to Cotton Belt Oil & Gas Company, conveying "One-Fourth (¼) interest in and to all of the oil, gas, salt, sulphur, potash and other minerals of every kind and character in and under and that may be produced from the following described lands situated in Jefferson County, Texas, to wit." Third, "Conclusions of Law. I conclude the law applicable to this case to be as follows, to-wit: That the contract executed by the

defendant, Jas. A. Harrison, on the 24th day of January, 1936, and as above set out in full, was under the facts an agency contract appointing the plaintiff, Sam Villiva, exclusive agent to sell or procure a purchaser for the royalty interest described in said instrument, carrying with it the obligation owing by an agent to principal."

"That the plaintiff, Sam Villiva, did not procure and tender to Jas. A. Harrison a purchaser for the royalty interest, and the instrument of conveyance to the Cotton Belt Oil & Gas Company presented to the said Jas. A. Harrison and wife on the 31st day of January, 1936, is not and was not in compliance with the terms and conditions of the said agency agreement."

"That the defendant, Jas. A. Harrison, is entitled to judgment decreeing that the plaintiff take nothing by his suit, and that the defendant go hence with his costs without day."

We make the following additional fact conclusion: Appellant never revealed to appellee the fact that he was buying the property for himself at $250 and selling it to Cotton Belt Oil & Gas Company for $1,000.

## Opinion.

The facts support the court's judgment. In the first place, appellee was to sell only a royalty interest in the land; the deed tendered and which he refused to execute was a mineral deed conveying "One-Fourth (¼) interest in and to all of the oil, gas, salt, sulphur, potash and other minerals of every kind and character in and under and that may be produced from the following described lands situated in Jefferson County, Texas, to-wit."

The following quotation from 31 Tex. Jur. 1021 draws a distinction between the property covered by the contract and the property described in the deed tendered to appellee for execution:

"Under the usual form of royalty deed (§ 305), the grantee acquires an interest in the royalty accruing under the existing lease and a corresponding interest in the lessor's right of reverter. Thus the grant of 'an undivided one-thirty second interest in and to all of the natural gas, oil * * * and all other minerals and mineral substances in, on and under' certain leased land vests in the grantee a right to a one thirty-second interest in the grantor's possibility of reverter. But of course a deed may be so worded as not to give the grantee any interest in the minerals other than a share of the royalties to be earned under an existing or a future lease; in such a case the grantor is entitled to the bonus money and delay rentals that may accrue under a subsequent lease.

"When one who has purchased a fractional interest in the minerals underlying an entire tract owned by several different persons in undivided interests thereafter acquires from one of said owners an oil and gas lease covering the acreage to be allotted to him in a pending partition proceeding, the owner is entitled to the entire royalty awarded by the lease, and the lessee may not claim any part thereof by virtue of his fractional interest in the minerals underlying the entire tract."

In Queen v. Turman (Tex.Com.App.) 257 S.W. 1092, it is stated: "A deed conveying * * * 'an undivided one-half interest in 60 acres out of my undivided one-half interest in and to 121 acres' * * * and reciting the interest therein conveyed as 'being all of the oil and minerals under an undivided 30 acres or one-half of same under an undivided 60 acres' " passes to the grantee "an undivided royalty interest of 30/121 in and to the entire tract".

In Smith v. Duncan, 62 S.W.(2d) 365, the Court of Civil Appeals at Dallas, in passing upon this question, stated: "Lessors of 80 acres of mineral land who were entitled as royalty to ⅛ of all oil produced, who sold to purchaser undivided 1/64 interest in all oil, gas, and minerals owned by them, conveyed 1/64 undivided interest of their reversionary interest to oil and other minerals in place and corresponding interest in royalty."

Again, under the contract, only appellee was to sign the deed; appellant demanded a deed to be executed both by appellee and his wife. Appellant never at any time requested appellee to execute to him a deed signed only by himself, conveying the very interest described in the contract.

But, for another reason, the judgment has support. The contract in controversy was nothing more than an agency contract, giving appellant the exclusive agency to sell the specific property. In Shannon v. Marmaduke, 14 Tex. 217, Judge Wheeler, speaking for our Supreme Court, said: "It is the well settled general rule, that a person cannot act as agent for

another * * * and become himself the buyer."

This proposition is now, and has always been, the law of Texas. Tex.Jur. vol. 2, pp. 593, 594; Shannon v. Marmaduke, 14 Tex. 217; Pridgen v. Adkins, 25 Tex. 388; McMahan v. Alexander, 38 Tex. 135, 136; Bass v. Tolbert, 51 Tex.Civ.App. 437, 112 S.W. 1077; Turnley v. Micheal (Tex. App.) 15 S.W. 912; Colbert v. Shepherd, 89 Va. 401, 16 S.E. 246; Sanford v. Remington-Rand, Inc. (Tex.Civ.App.) 64 S.W. (2d) 797. See, also, 2 American Jur. 210, § 261; 2 C.J. 593; 3 C.J. Secundum, Agency, 23, § 144; Chezum v. Kreighbaum, 4 Wash. 680, 30 P. 1098, 32 P. 109.

In Colbert v. Shepherd, 89 Va. 401, 16 S.E. 246, 248, the facts were as follows: On February 28, 1889, George Washington Shepherd, the owner of the plot of land on which Mary Washington was buried, entered into an agreement with the firm of Colbert & Kirtley, as follows: "I agree to give Messrs. J. W. Colbert and William F. Kirtley a sixty (60) day option on the lot containing about two acres of land, with the Mary Washington monument and large marble shaft thereon, for the sum of twenty-five hundred dollars. And I further agree to give the same length of time on the lot adjoining, containing ten acres of land, for the sum of five thousand dollars. And the said option shall be in force from this date, February 28, 1889," to which, at the request and direction of Mr. Kirtley, Mr. Shepherd added: "And they (Messrs. Colbert &. Kirtley) have full authority to sell said property at the price named above, and will make title to same when sold. G. W. Shepherd." Pursuant to this agreement Colbert & Kirtley advertised and offered for sale the property described therein, and on the 13th day of April, 1889, they advised Shepherd that they were ready and willing to purchase the property and tendered him their check for the amount stipulated in the agreement and requested him to execute and deliver to them a conveyance of title to the property, which he refused to do; thereupon this suit was brought by Colbert & Kirtley against Shepherd for damages for "the alleged breach" of the contract copied above. Denying recovery, the court said:

"It is a general rule of law, as well as of morals, that an agent to sell cannot buy. * * * The undisputed fact is that these papers containing the 'option' were given to a firm of land agents as authority to sell these lots, and that they did, as said agents, so advertise them for sale; and, even though the language of the papers and the evidence left it doubtful whether the option was to buy as well as to sell, the law would not infer that an agent to sell could himself become the purchaser. Story, Ag. § 210. In section 211 Judge Story says: 'It is well settled that an agent employed to sell cannot himself become the purchaser, and an agent employed to buy cannot himself be the seller.' In Farnsworth v. Hemmer, 1 Allen [Mass.] 494, [79 Am.Dec. 756] Bigelow, C. J., said: 'A man cannot become the purchaser of property for his own use and benefit which has been intrusted to him to sell.' See Wadsworth v. Adams, 138 U.S. 380, 11 S.Ct. 303 [34 L.Ed. 984]; Ralston v. Turpin, 129 U.S. 663, 9 S.Ct. 420 [32 L.Ed. 747]; 1 Story, Eq. §§ 307, 315; Lamar v. Hale, 79 Va. [147] 158; Statham v. Ferguson, 25 Grat. [(66 Va.) 28] 40.

"The transaction between Colbert & Kirtley and the defendant, Shepherd, whether viewed in the light of the well-settled principles of law applicable to the relation of principal and agent, or of the undisputed testimony in the record, shows that the plaintiffs were his agents to advertise and sell his lots, and that, as such, they could not become the purchasers of them, or of either of them; and, independently of the other questions to be considered, the attempt to obtain the title in and for themselves was a fraud upon the defendant."

Colbert v. Shepherd answers appellant's contention that he had the right to buy the royalty for his personal account because of the use of the word "option" in the contract and on the check; the contract in the Shepherd Case was designated an option.

There is no merit in the contention that the contract was an "option" and not an agency contract, because no compensation was stipulated in the contract for appellant's services; the law gave him a reasonable compensation.

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.