EMPIRE LIFE INSURANCE COMPANY
OF AMERICA, Plaintiff,

v.

Lloyd SORENSON et al., Defendants.

Civ. No. 3083.

United States District Court,
D. Montana,
Great Falls Division.

Sept. 1, 1972.

Alexander, Kuenning & Miller, Great Falls, Mont., for plaintiff.

Brazier, Dowling & Erickson, Helena, Mont., Whiting, Lynn, Jackson, Freiberg & Shultz, Horace R. Jackson, Rapid City, S. D., for defendants.

OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Centennial Reserve Life Insurance Company (Centennial) was authorized to sell and did sell life insurance in Montana for a period of time following June 1, 1964. During at least a part of that time one Sorenson was the agency director for Centennial under a written contract.[1] In June 1968 Empire Life Insurance Company of America (Empire), the plaintiff here, then authorized to transact insurance business in Montana, acquired all of the life insurance business of Centennial. Empire ceased

---

1. I find that the contract does not affect any of the rights of the parties in this case.

to be authorized in Montana in 1969 but it did retain the insurance contracts covering Montana residents and it employed Sorenson as a conservation agent for the State of Montana. Sorenson's duties as conservation agent were to service the policies of Montana residents to the end that they would remain policyowners with Empire. For these services Sorenson was paid $500.00 per month from sometime in 1968 until April 31, 1972. Centennial had made promises relative to dividends which Empire did not keep and this caused some discontent among the Empire policyholders.

On January 15, 1972, Sorenson became insurance manager for Defendant Montana National Life Insurance Company (Montana Life). Sorenson had available to him a record of the Empire policies in Montana. Between January 15, 1972, and April 1, 1972, Sorenson used the lists of Empire policyholders for the purposes of Montana Life, directing Montana Life's salesmen to such policyholders. He answered inquiries from Empire policyholders in such a way as to put Montana Life's salesmen in touch with them. He used his position as an agent of Empire to introduce Empire policyholders to Montana Life salesmen. The Montana Life salesmen advised Empire policyholders to either cash in or take paid-up policies in Empire and tried then to fill the thus-created insurance need with Montana Life policies. Eighty percent of the people solicited by Montana Life salesmen were Empire policyholders. In the period March 1 to April 1, 1972, the Director of Sales and Training for Montana Life solicited only Empire policyholders and sold 93 policies to former Empire policyholders.

I conclude from the evidence that Montana Life through Sorenson as its insurance manager knew the Empire policyholders in Montana, knew that there was some dissatisfaction among them, and embarked on a program in March and April of 1972, the main purpose of which was to create dissatisfaction among Empire policyholders, cause the Empire policyholders to cash in or

convert to paid-up policies and to fill the insurance vacuum thus created with Montana Life policies. In the course of this program Sorenson, and through him Montana Life, used Sorenson's position with Empire to divert rather than conserve the Empire insurance business. As a result of these acts Empire has suffered and will continue to suffer irreparable harm.

Several defenses are offered.

■ Defendants urge that Empire did not pay the dividends which Centennial Reserve had agreed to pay, that this conduct was willful, and that hence Empire does not come to court with clean hands. Assuming, though it is not shown, that Empire's conduct was fraudulent or willful, no improper or fraudulent acts were directed at Sorenson in his capacity as an employee of Empire nor at Montana Life, and the defense is unavailable to them. *See generally* 27 Am.Jur.2d Equity § 133 (1966).

■ It is urged that Empire has no capacity to sue. In a diversity case the capacity of a party to sue must be judged by the law of the state where the action arises. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). In Montana, R.C. M.1947 §§ 15–2299 and 15–22–117 provide that a foreign corporation without a certificate of authority may not transact business or maintain a suit. R.C.M. 1947, § 40–2801 prohibits the transaction of insurance business without a certificate of authority from the Commissioner but does not deny unauthorized companies access to the courts and does provide that a certificate of authority is not required as to transactions relative to policies lawfully written in Montana.

■ The Montana legislature placed the insurance industry under the supervision of the Insurance Commissioner, and there appears to be no reason for a dual control which would in effect make insurance companies qualify with two state agencies. Insurance corporations may not be organized under the Montana Business Corporation Act (R.C.M.

1947 § 15–2203) and other portions of the code indicate that it was not intended that foreign insurance companies be treated as other foreign corporations. Thus to the extent that the statutes govern, the Secretary of State is the agent for the service of process on most foreign corporations (R.C.M.1947 § 15–2298) and the Commissioner is the agent for service of process on insurance companies (R.C.M.1947 § 40–2818). These distinctions are preserved to the extent that the Rules of Civil Procedure govern service of process (Mont.R.Civ.P. 4D(4)).

For these reasons I conclude that the Insurance Code (specifically R.C.M.1947 § 40–2801) rather than the Business Code (specifically R.C.M.1947 §§ 15–2299 and 15–22–117) governs and that plaintiff, though without a certificate, in acting to service policies written in Montana was not in violation of law and is not prevented from maintaining this action.

■■ The briefs discuss at considerable length the ownership of the lists of Empire policyholders. I deem it unnecessary here to determine ownership. Sorenson, so long as employed by Empire, owed to Empire a basic obligation of loyalty. He was under a positive duty to refrain from exploiting Empire for the benefit of himself and his employer, Montana Life. Wadsworth v. Adams, 138 U.S. 380, 11 S.Ct. 303, 34 L.Ed. 984 (1891); Wells Truckways, Ltd. v. Burch, 247 F.2d 194 (10th Cir. 1957); Manufacturers Casualty Insurance Co. v. Martin-Lebreton Insurance Agency, 242 F.2d 951 (5th Cir. 1957); see Taylor v. Quittner, 218 F.2d 549 (9th Cir. 1954). Montana Life's plan for Montana, of which Sorenson was an integral part, involved a breach of Sorenson's duties as an agent of Empire. Montana Life was chargeable with knowledge of Sorenson's relationship to Empire and neither it nor Sorenson should have put the plan into operation. True, Sorenson's relationships with Empire ceased April 30, 1972, but to condone the continuation of activity under a plan generated in violation of Sorenson's fiduciary duty and put in existence during the continuance of it would be to allow Sorenson and Montana Life to drive to the heart the dagger which during the period of Sorenson's employment was positioned in the dermis. This equity will not condone.

For these reasons the motion to dissolve the restraining order is denied, and it is continued in force until further order of the court. This opinion constitutes the findings of fact and conclusions of law of the court.